## WILLARD C. LEONARD

v.

## VILLAGE OF RUTLAND.

January Term, 1894.

*Taking of waters.   Mill privilege.   Damages.*

1.  The appropriation of the water of a stream so that a mill owner below loses the benefit of it is a "taking" within the meaning of the charter of the village of Rutland, for which such owner may have damages.

2.  That the village had previously taken a part of the same stream is no reason why the owner should not have damages for this additional taking.

3.   The damages should be assessed upon the assumption that the village will draw all the water it can through the pipe as laid, although such is not now and probably will not be for many years the fact.

Petition for the assessment of damages for the taking or water under its charter by the village of Rutland.   Heard upon the report of commissioners at the September term, 1893, Rutland county, TYLER, J., presiding.   Judgment *pro forma* for the defendant.   The petitioner excepts.

Prior to 1891 the village of Rutland had derived its water supply for the most part from the Mendon branch of East creek, in the town of Rutland.   This supply had become insufficient, and, for the purpose of increasing it, in the summer of 1891 the village constructed a reservoir into which it conducted the water from the aforesaid Mendon branch by means of a canal, and from which it carried it by means of a main, diminishing from twenty-four inches to twelve inches in diameter, into a distributing reservoir near the village.   The petitioner was the owner of mills operated by water power situated upon East creek below the point where the water was thus taken out, and his alleged damages were that he was deprived of the use of the water for the operation of his mills.   The reservoir and canal were so constructed that what water did not run through the main returned to the stream above the petitioner's mills.

The commissioners found that the petitioner was thus damaged; that if the village took all the water which could run through its main, his damages would amount to twenty-five hundred dollars, but that the village was not then using this amount of water and in all probability would not in the future, and that upon this basis the damages were two thousand dollars.

The provisions of the charter under which the water was appropriated appear in the opinion.

*Geo. E. Lawrence* for the petitioner.

There can be but one assessment of damages, and the petitioner is entitled to whatever the village *can* injure him as it has constructed its system. Otherwise he has no redress in the future. Lewis Em. Dom., 477, 565 ; *Bailey* v. *Woburn*, 126 Mass. 416 ; *Ipswich Mills* v. *County Commissioners*, 108 Mass. 363.

*J. C. Baker* and *C. H. Joyce* for the defendant.

TYLER, J. This is a petition brought to recover damages under the charter of the village of Rutland, for the taking of water from a stream upon which the petitioner's mills are situated.

Section 39 of No. 204, Laws of 1882, is as follows :

"The village of Rutland, in its corporate capacity, is hereby authorized and empowered to increase, enlarge and improve its water sources, water rights and aqueducts, with a view of providing an increased supply of pure water for public and private uses in said village ; and for that purpose it may take and hold, by purchase or otherwise, such ponds, springs, streams, water courses and the waters thereof, within the limits of the towns of Rutland, Chittenden and Mendon, in the county of Rutland, in this state, and such lands under and around the same as may be necessary for the purposes aforesaid."

The only reasonable construction of the above section is that the village was authorized to take ponds, streams, water sources and their waters, *or such portions of their waters*, as might be necessary, etc.

Section 42 provides that the village shall be liable to pay all damages that shall be sustained by persons *in their property* by such taking of water. The petitioner did not own the water of the stream in the sense that he might have owned the land around a spring. The specific water as it flowed along was not his property. His property in the stream consisted of a right to use its power for the propelling of his mills as it passed along in its natural current. It was

a property that he had a right to compensation for when the water was diverted from its natural course for public purposes, the same as if a spring of water and the land around it had been taken in the exercise of the right of eminent domain. There can be no doubt that it was the design of the legislature in enacting this section to recognize this kind of property and to provide compensation when water is taken in which persons have a right of use.

It is found that in December, 1891, the defendant, by its trustees, constructed a new reservoir and conducted a portion of the water of the stream to it by means of a canal, and that water was conveyed through a main pipe from the reservoir to the village. For this diversion of the water of the stream the petitioner claims damages.

The defendant's counsel contend that there was a taking of this stream by the defendant in 1882, or soon after the passage of the act, and that no further compensation can be required for the taking in question. But it is not found that the entire stream was ever taken by the defendant. It does appear that the quantity of water which had been taken prior to 1891 was sufficient until that time, when, by the growth of the village, it became insufficient and this additional pipe was put in.

The defendant's counsel make a claim of riparian ownership, but this question is not presented by the report.

In December, 1891, the defendant _took_, within the meaning of the statute, a certain quantity of water from the stream and deprived the petitioner of its use, which use was his property. The only question is, how much was he damnified by such taking. The commissioners have made an alternative finding on this subject. The measure of his damages is the value of the right taken by the defendant. The right is to draw as much water as will flow through the main pipe from the reservoir. The exercise of that right will deprive the petitioner of the use of that quantity of water at his mills.

The defendant may not draw water to the full capacity of its main pipe for some time to come. It may never do so constantly. When it does not a part of the water will flow from the reservoir back into the stream and the petitioner will have the use of it. Upon this basis the petitioner's damages would be constantly varying. If the damages are to be measured by the amount of water which the defendant now draws from the reservoir, and the petitioner is awarded the smaller sum named in the report, and the defendant (now the city of Rutland) should hereafter require water to the full capacity of its pipe, the petitioner would be without remedy for the additional loss of water. . .He can have but one recovery. The damages must be for the future and prospective as well as the immediate loss of the use of the water. *Bailey* v. *Woburn*, 126 Mass. 416, and cases cited are full authorities on this point, if authorities are required to support so plain a proposition.

There was no error in permitting the petitioner to show the cost of steam power to replace the power lost by a diversion of the water. It tended to show the value of the water power and might properly be considered.

*The pro forma judgment is reversed and judgment for the petitioner for the larger sum named in the report.*