92  364
93  269
93  270

ELIHU T. HAMOR *vs.* BAR HARBOR WATER COMPANY.

Hancock.     Opinion January 6, 1899.

*Eminent Domain.   Water Company.   Damages.   Easement.   Spec. Laws, 1874, c. 449; 1895, c. 299.*

In an action for the diversion of water, it appeared that the Bar Harbor Water Company was authorized to take water from Eagle Lake, which is eminent domain, for domestic purposes; that the company by regular procedure took the water by means of a twenty-four inch pipe and paid damages for the same; and that the plaintiff is the tenant of a mill on Duck Brook an outlet of the lake. *Held;* that his rights are those of a riparian owner, entitled to the regular flow of the stream; but it does not concern him that the Water Company may have used the water taken from the lake for purposes unauthorized by its charter, so long as it does not take an excess of what it was authorized to take. That is a consideration for the public, and not for the individual. It makes no difference to him what use may be made of the water taken. He can only be concerned in the measure taken.

The Water Company also having become the lawful owner of a dam at the outlet of the lake which it was authorized by the legislature to maintain, so as to increase the water supply, the plaintiff claimed an easement in this dam by which he may regulate the flow of water to his mill. *Held;* that the evidence fails to show such easement; and if it did, it was extinguished by procedure in condemning the dam and land where damages were paid to all owners therein.

It further appeared that the Water Company have maintained at the outlet of Duck Brook a solid stone dam that raises the water some three feet, and thereupon the plaintiff complained that he is thereby deprived of the water to which he is entitled at his mill. *Held;* that while he is entitled to the natural flow of the stream, the volume is substantially the same with the dam as without it, inasmuch as it does not divert the water through any other outlet; and that he has no cause of action.

See *Same* v. *Same,* 78 Maine, 127.

ON REPORT.

This was an action on the case for diversion of water from Eagle Lake, a great pond, in Eden, Hancock County, containing five hundred and six acres.

The water of Eagle Lake flows into Frenchman's Bay through Duck Brook, a stream about two miles in length. The plaintiff is tenant of the mill situated at the mouth of Duck Brook, about two

miles from Eagle Lake and below the high tide mark of French-man's Bay.   The defendant is a corporation created by the Legis-lature of Maine by charter granted in 1874 and amended in 1895, for the purpose of supplying Bar Harbor and other parts of the town of Eden with water from Eagle Lake or Duck Brook.

The corporation formerly took its water supply from the brook. Before any water had been taken directly from the lake and before there had been any condemnation of water, the plaintiff and his partners, then owners of the mill of which he is now the tenant, sued the Bar Harbor Water Company for damages.   The case is reported in 78 Maine, 127.   The supply now and during the term covered by this suit has been taken directly from the Lake and in no part from the brook.

From the undisputed testimony the following facts appear:

Duck Brook flows from Eagle Lake and, since there has been a saw mill on this brook, there has been a dam at the foot of the lake with a gate in it for the purpose of regulating the supply of water flowing from the lake through the brook to the mill.   The main-tenance of this dam and gate is essential to the operation of the mill.   Incidentally there has also been a dam and gate about half way down from the lake to the mill at the foot of a small, natural, subsidiary reservoir called New Mill Meadows.

The defendant Water Company sells water in the village of Bar Harbor and, recently, also in the village of Hull's Cove, both in the town of Eden.   It derives its authority from the Legislature by special charter.   It takes water from Eagle Lake by a pipe 24 inches in diameter running through a dam at a point just below the sill of the old gate used by the plaintiff.   It formerly took water farther down the brook, at New Mill Meadows.   During the period complained of in the writ, from July 30, 1894, to March 13, 1897, it has taken its water from the lake by its pipe as mentioned. As Bar Harbor has grown and the water system has been improved, a large and constantly increasing amount of water has been taken and used by the Water Company and the plaintiff has had a con-stantly diminishing supply in Duck Brook for his use at the mill. This has occasioned litigation between these same parties as before

stated. In 1893, this plaintiff, then tenant of the mill, brought another suit to recover damages for the six years prior to that date and this suit was settled and the plaintiff paid damages on July 30, 1894. Down to 1894 the Water Company had taken no steps under its charter to condemn the water of Duck Brook or Eagle Lake, but had submitted to these periodical suits for damages. In May, 1894, it took proper steps to condemn a certain quantity of the water of Duck Brook and Eagle Lake. Immediately afterwards, in June, 1894, this plaintiff, as tenant, and Mrs. Buck as owner of the mill property, brought a petition to the county commissioners for the assessment of their damages for the taking of water in the future to the extent and as described in the published notice of the water company. And in the settlement between all parties on July 30, 1894, $2100 were paid by the Water Company in full for all diversion of water up to that date and in full settlement for all water to be taken or diverted in the future to the extent described in the company's notice of condemnation, which was especially referred to in the release.

From the date of the settlement referred to, to November 1895, the condition of things remained the same. The defendant continued to take water as before and the plaintiff to operate his mill as best he could, sawing some lumber spring and fall by using and regulating the surplus water with the gate in the dam at the foot of the lake. In November, 1895, the defendant took away the old dam at the lake and built a new and substantial one higher than the old. The old gate was taken away with the dam and not since restored. There is no gate in the new dam and no way of controlling the water. The lowest point in the new dam is a waste-way in the centre some three feet and nine inches higher than the bottom of the old gate. The water, that is not taken by the defendant through its pipe, remains behind the dam till it rises to the level of the water-way and then flows over gradually and runs away.

In 1896 the defendant extended its system to Hull's Cove and has furnished water to that village ever since through an eight inch main.

The plaintiff also claimed that during the period complained of, —from 30 July, 1894, to the date of the writ, 13 March, 1897,— the defendant has supplied water in Bar Harbor for many purposes other than what would seem to be covered by its charter,— such as furnishing steamers and other vessels at the docks, water motors to run printing presses, saw and planing mills, grist mills, elevators, coffee mills, boilers, laundries, electric light plants, rock crusher and other matters of private enterprise, and also for the extinguishment of fires.

The charter of the defendant was granted in 1874 and the purposes are therein expressed to be, "conveying to and supplying the village and vicinity of Bar Harbor, in the town of Eden, Hancock County, with pure and wholesome water, . . ."

The only amendment to this charter since that date, of any importance in this connection, is that of 1895, chapter 299, which gives the Company power, "in addition to the powers conferred upon it by its act of incorporation", Sec. 4, To erect a dam "for the purpose of raising the level and increasing the capacity of either or both of said lakes or of any such stream (referring to Eagle Lake, Turtle Lake above it). Damages caused by flowage shall be assessed and paid in the manner provided by the Bar Harbor Water Company's charter in case of taking land for any of its corporate purposes."

Sec. 5. "To supply water to the inhabitants of any part of the town of Eden not only for domestic purposes, but also for shipping and the extinguishment of fires."

The plaintiff claimed that, as tenant in possession of the water mill, he is entitled to the full, natural flow of water from Eagle Lake down Duck Brook past his mill to the sea, limited only by the condemnation proceedings of 1894; and that he has a prescriptive right to regulate the flow of water by means of a gate in the dam at the lake; that the defendant company has violated his rights in removing the gate, in holding back water behind the new dam in excess of the requirements of the company and in taking more water than was condemned and paid for in 1894,—more in fact than its charter authorizes,—such as water for Hull's Cove and water to sell for power purposes in Bar Harbor.

The defendant denied that it has supplied water to territory and for purposes not authorized by its charter or held back water in excess of its requirements; contended that the plaintiff has no rights in either lake or brook which are superior to the rights of the defendant, as Eagle Lake is a great pond and the legislature has authorized the defendant's use of it; that by special act of legislature it had a right to build the dam and raise the level of the lake; that it was not required by its charter nor by the special act to pay any damages for diversion or detention of water; that having properly condemned the land on which the new dam is built any damages suffered by the plaintiff for the removal of the gate and the building of the new dam should be proceeded for not by an action of tort, but in the manner provided by the Act; that it has done nothing more than was authorized by the plaintiff by the settlement of 1894; that for any violation of its charter the state should complain and not an individual; and, finally, that this plaintiff cannot maintain this action as he has suffered no damage and is not the owner of the property.

*J. A. Peters, Jr.*, for plaintiff.

Plaintiff as sole tenant in possession has right to recover for acts diminishing the value of his possession and is the only person who could sue for such injury. *Lyford* v. *Toothaker*, 39 Maine, 28.

For any injury affecting the present enjoyment of water rights the person entitled to the present enjoyment thereof is the proper party to bring the suit; but for any permanent injury to such rights the reversioner may maintain an action. Gould on Waters, Edition of 1883, § 376.

In case both tenant and landlord are injured each could sue for injury to his separate right. Gould on Waters, § 376.

In this case probably both tenant and landlord have suffered injury, because the acts of the defendant have diminished both the value of the possession and the value of the title or reversionary interest.

Condemnation and release of 1894: Quantity of water taken in 1894 is limited by the size of the outlet pipe; also the purposes for which the water is taken. If this limitation does not exist, then

all the water was taken which would flow through a 24-inch pipe ending in a 16-inch outlet and this would empty the lake in one hundred days according to the estimate of the defendant's engineer; and thus all the water of the lake would be taken, which is both unnecessary and unreasonable.

The purposes of the company are expressed in its charter to be "for the purpose of conveying to and supplying the village and vicinity of Bar Harbor, in the town of Eden, Hancock county, with pure and wholesome water." No amendments to the charter affecting the purposes of the corporation were passed until after the condemnation proceedings of 1894. Consequently the rights of the defendant consist in taking water to supply Bar Harbor with "pure and wholesome water."

This means water for ordinary domestic purposes. The company and the legislature have so construed the act. This is not conclusive as to construction; but the fact that this legislation would have been unnecessary, if the present claims of the company are well founded, should have great weight in construing the charter. *Quincy* v. *Boston*, 148 Mass. 392. The language of the act does not naturally cover water for fires or shipping. It is not necessary for these purposes that water be pure and wholesome. Supplying water for shipping is not supplying the village and vicinity of Bar Harbor with pure and wholesome water; but by furnishing water to vessels and steamers that touch at Bar Harbor in large numbers, the company is supplying water to people of other communities and for taking away. The company has the right to do this now, since the amendment of 1895, by instituting proceedings of condemnation, but not having taken such proceedings we claim to recover for all such water taken from our use. A grant of this kind is to be construed strictly against the company and no powers are to be read into the charter. *Rockland Water Co.* v. *Camden Water Co.*, 80 Maine, 544; *Hamor* v. *Bar Harbor Water Co.*, 78 Maine, 133.

The company never has had authority to sell water for the purpose of propelling machinery. Its charter, as it now reads, is almost exactly similar to the charter of the Rockland Water Co.

construed in 80 Maine, 544. The Bar Harbor charter has read since 1895, "to supply water . . . . not only for domestic purposes but also for shipping and the extinguishment of fires." The language of the Rockland charter was "a supply of pure water for domestic purposes, extinguishment of fires, and the supply of shipping in the harbor of Rockland." The court says, construing this language, "The language of the charter is plain and clear upon that point. The water which, by the terms of the charter, the company was authorized to take and use was for certain specific and defined purposes, and beyond that the plaintiffs were not authorized to go. By that charter they had no right to take or use the water for the purpose of propelling machinery. The right which they acquired from the state was a franchise right to so much water as was necessary for the purposes aforesaid." "When those purposes were fulfilled or satisfied this company could not lawfully hold the whole pond and thus eliminate the express provision of the legislature limiting their rights. This franchise right was not an exclusive right—a right by title or property right to the entire body of water of Tolman Pond—but only to so much thereof as was required for those purposes specified in the charter." The parallelism of the two cases continues when it is noticed that in the Bar Harbor charter the same clause occurs mentioned above. "Said corporation is hereby authorized, for the purposes aforesaid, to take, detain and use the water of Eagle Lake and Duck Brook," etc.; showing a right to take, not the total quantity, but only so much as is necessary for certain specified purposes.

In *Para Rubber Shoe Co.* v. *Boston*, 139 Mass. 155, the language of the legislature was, "so much of the water . . . . as shall be necessary for extinguishing fires, and for all ordinary domestic and household purposes and for the generation of steam." The court said "there can be no pretense that grinding, washing and cooling rubber, at least, are among the purposes" . . . . covered by the act. *Smith* v. *Dedham*, 144 Mass. 177, appears to hold that fire purposes have to be mentioned or covered other than by the term "pure water."

The defendant water company takes water from Hamor's mill

and sells it to Asa Hodgkins to run his mill and claims that Hamor
has no redress.    The legislature did not attempt to authorize this
to be done and has no power to do so under the constitution.
This is simply taking one man's property and giving it to another.
Taking this water from the use of the plaintiff is taking his
property as much as if his lot of land had been taken.    So decided
in *Hamor* v. *Bar Harbor Water Co.*, supra.

Besides taking water from the plaintiff for unlawful purposes in
Bar Harbor, the defendant company has since the spring of 1896
diverted and sold water to the people of Hull's Cove.    It was
authorized to do this by the special act of the legislature for 1895 ;
but it has taken no steps to legally condemn water for this purpose,
any more than it has for supplying shipping and for fires—both
purposes authorized by laws of 1895—and until it does so we can
recover our damages in this form of action.    *Lancaster* v. *Ken.
Log Driv. Co.*, 62 Maine, 272.

Hull's Cove not included in charter:    The language is "the vil-
lage and vicinity of Bar Harbor in the town of Eden."    Cases,
supra.

Unreasonable detention of water:    Under its charter the defend-
ant is entitled to detain a supply reasonably sufficient for its charter
purposes.    Even under the doctrine of the *Watuppa Pond cases*,
in Massachusetts, and *Auburn* v. *Union Water Power Co.*, 90
Maine, 576, it is not claimed that a water company or a city hold-
ing rights in a great pond is entitled to take any more of the water
than is reasonably necessary for charter purposes.    As Judge
WALTON says in the latter case, "True, it is sometimes said that
there must be no diversion of the waters of a stream; that the rip-
arian proprietors above must allow the water to flow on in undi-
minished quantities to the riparian proprietors below.    But this is
not a correct statement of the law.    And the inaccuracy of the
statement has often been pointed out.    The true rule is that there
must be no unlawful or unreasonable diminution or diversion of the
water."    In *Rockland Water Co.* v. *Camden Water Co.*, it is held
distinctly that a company chartered as this is has only the right to
take so much water as is necessary for the "purposes aforesaid,"

and " when those purposes were fulfilled or satisfied, this company could not lawfully hold the whole pond and then eliminate the express provision of the legislature limiting their rights."

Plaintiff's right in dam and gate :  The plaintiff claims a prescriptive right to maintain a gate in the dam.  A prima facie title by prescription is shown by the testimony of the use of the dam with the mill, the necessity of such use and the deeds of the mill privilege back to 1848.  The defendant claims that under the doctrine of *Auburn* v. *Water Power Co.*, we can gain no prescriptive rights in the water of this great pond against any use the state may grant of it.

We answer that we do not claim any rights adverse to the governmental use of the lake.  So far as the legislature authorizes water to be taken by the defendant company,—thus far must our gate be raised.  If the legislature has granted all the water of the lake we can maintain no gate at all.  But under the facts that exist we claim to have a right to maintain a gate to regulate the water that the state has not given to the defendant, and the removal of that gate by the defendant is one element of our claim for damages.

The Auburn case asserts the right of the legislature to give a town the right to take a reasonable quantity of water from a large body of water claimed, in the possession of and dammed by the mill owners.  In our case the water company is in possession claiming all the water and we are seeking a fair division.

The Auburn charter says that " the city, or said trustee, or said corporation, shall pay all damages sustained by any person or corporation in property by the taking of any water," etc.

The Bar Harbor charter says that " said corporation shall be held liable to pay all damages that shall be sustained by any persons by the taking of any land or other property, or by flowage, or by excavating, (etc.) . . . . and also damages for any other injuries resulting from said acts."

*L. B. Deasy*, for defendant.

(1.)   Defendant has the right under its charter and amendment,

irrespective of any condemnation to take and use the water of Eagle Lake, and maintain the dam as built.

(2.)   We have condemned the water of the lake, not, "so much as is necessary to supply Bar Harbor," but a quantity measured by the capacity of the outlet pipes, and that under this condemnation all water taken and used has been rightfully done, the capacity of the outlet pipe not having been exceeded.

(3.)   As against the plaintiff we have the right to use the water to the capacity of the outlet pipe, even for purposes not contemplated in the condemnation, because we bought that quantity and paid him for it.

(4.)   Dam was built and maintained rightfully under the condemnation of 1895, and no action of tort can be maintained in respect of it.

Plaintiff has suffered no damage.   It is the owner of the mill privilege, if any one, and not the plaintiff who has been damaged. *Moody* v. *King*, 74 Maine, 497; *Sumner* v. *Tileston*, 7 Pick. 201; *Baker* v. *Sanderson*, 3 Pick. 352; *Monroe* v. *Gates*, 48 Maine, 467.   Plaintiff leased the mill at a rental of one dollar and fifty cents per thousand feet for lumber sawed.   If the plaintiff by reason of having no water could saw no lumber, he had to pay no rent.   The amount of water condemned exceeds the whole supply in the lake, and neither mill owner or plaintiff has suffered damage by any act of defendant.

Defendant has committed no tort and plaintiff, if injured, must pursue the statutory remedy.   *Hamor* v. *Bar Harbor Water Co.*, 78 Maine, 127; *Mason* v. *R. R. Co.*, 31 Maine, 215; *Hickox* v. *Cleveland*, 8 Ohio, 543, (32 Am. Dec. 730); *Stevens* v. *Proprietors*, 12 Mass. 465; *Brown* v. *Beatty*, 34 Miss. 227, (69 Am. Dec. 389); *Cushing* v. *Baldwin*, 4 Wend. 667, (21 Am. Dec. 168); *Plank Road Co.* v. *R. R. Co.*, 13 Ind. 90, (74 Am. Dec. 246.)

Under the statutory proceeding plaintiff must be held to have recovered the full value of his dam and gate, the value of the land taken, also consequential damages to his other property and rights. This condemnation gave defendant the exclusive right to occupy the dam and gate.   His damages have been estimated accordingly

*Goodwin* v. *Cinn. & ·W. C. Co.*, 18 Ohio St. 169, (98 Am. Dec. 95); *Drury* v. *Midland R. R. Co.*, 127 Mass. 582; *Dickinson* v. *Fitchburg*, 13 Gray, 546; *King* v. *Minn. W. R. Co.*, 32 Minn. 224, (A. & E. R. R. Cases, 93); 6 Am. & Eng. Ency. 570; *Pittsburg, etc., Railway* v. *Gilleland*, 56 Pa. St. 445, (94 Am. Dec. 97); *Johnson* v. *Atlantic & St. Lawrence R. R. Co.*, 35 N. H. 569, (69 Am. Dec. 560); *First Parish in Woburn* v.. *County of Middlesex*, 7 Gray, 106; *Winona, etc., R. R. Co.* v. *Waldron*, 11 Minn. 515, (88 Am. Dec. 100); *Walker* v. *O. C. & Newport R. R. Co.*, 103 Mass. 14; *First Church in Boston* v. *Boston*, 14 Gray, 215; *Commonwealth* v. *Coombs*, 2 Mass. 491; *Dearborn* v. *B. C. & M. R. R. Co.*, 24 N. H. 179; *Re Mt. Washington R. R. Co.*, 35 N. H. 134; *Wright* v. *Woodcock*, 86 Maine, 113. Counsel also cited: *Howe* v. *Inhabitants of Weymouth*, 148 Mass. 605; *Proprietors of Mills* v. *Randolph, etc.*, 157 Mass. 345; *Ingraham* v. *Camden & Rockland Water Co.*, 82 Maine, 335.

Counsel also argued that the plaintiff has no property in the water or in the flow of water in Eagle Lake; his water rights are subordinate to the right of the public. His right to the flow of water is subject to reasonable diminution and diversion. The alleged unauthorized uses of water for all purposes has been condemned, released and paid for. Hull's Cove is in the vicinity of Bar Harbor; at the time the charter was granted it was a mere suburb of Bar Harbor. The original charter authorized the taking of water for the extinguishment of fires, for the supply of shipping, and for running elevators and motors. These are public uses. 2 Dillon Mun. Corp. 597; *Opinion of Justices*, 150 Mass. 596; *Burden* v. *Stein*, 27 Ala. 104, (62 Am. Dec. 758); *Wayland* v. *Co. Com.*, 4 Gray, 500.

Plaintiff who has been paid for a diversion cannot object, whatever use is made of ·the water. Randolph on Eminent Domain, § 219; *State* v. *Newark*, (N. J.) 23 Atl. Rep. 130.

Plaintiff has not the right to the uninterrupted flow of water from the lake to the brook and thence to his mill: *Watuppa Reservoir Co.* v. *Fall River*, 134 Mass. 268, same case, 147 Mass. 548; *Auburn* v. *Union Water Power Co.*, 90 Maine, 576.

Plaintiff's claim to the right to control and regulate the water of the lake is not well founded: *Knox* v. *Chaloner*, 42 Maine, 150; *Arundel* v. *McCulloch*, 10 Mass. 71; *Com.* v. *Upton*, 6 Gray, 476; *Cary* v. *Whitney*, 48 Maine, 516; 1 Am. & Eng. Ency. p. 876; *Attorney General* v. *Revere Copper Co.*, 152 Mass. 450.

SITTING: EMERY, HASKELL, WHITEHOUSE, WISWELL, STROUT, FOGLER, JJ.

HASKELL, J. Eagle lake is a great pond. Defendant company by its charter, Act of 1874, c. 449, was authorized "to take, detain and use the water of Eagle lake and Duck brook, or either of them, in said town of Eden, and is also authorized to erect, maintain dams and reservoirs, and lay and maintain pipes and acqueducts necessary for the proper accumulating, conducting, discharging, distributing and disposing of water and forming proper reservoirs thereof." It was also authorized to take and hold necessary lands therefor and was required to pay "all damages that shall be sustained by any persons by the taking of land or other property or by flowage, or by excavating through any land for the purpose of laying down pipes and acqueducts, building dams and reservoirs, and also damages for any other injuries resulting from said acts." Unless the parties should agree upon the damages a method for their assessment was provided. The act also required surveys to be made locating dams, reservoirs, pipes and other fixtures, and plans thereof to be filed in the office of the town clerk of Eden and notice thereof by publication.

Prior to condemnation proceedings in 1894, the Water Company paid damages for the diversion of water from the Hamor mill on Duck brook. One suit to recover these damages was *Hamor* v. *Bar Harbor Water Company*, 78 Maine, 127. In 1894 the Water Company filed in the town clerk's office its notice that "it has taken and proposes to take, detain and use the water of Duck brook," and has caused surveys and profile plans to be filed in the town clerk's office, "showing the taking of the water of Eagle lake and Duck brook" under the provisions of its charter. "The quan-

tity of water to be taken may be determined by the outlet pipe," to wit:—"Pipe twenty-four inches in diameter starting from a gate house in Eagle lake, near the head of Duck brook, and running about 1505 feet to the stand pipe where the size of the outlet pipe is diminished to sixteen inches in diameter. The junction of the twenty-four inch and sixteen inch pipe is at a point fourteen five-tenths feet below the level of Eagle lake."

The plaintiff as tenant joined with the owner of the Hamor mill in a petition to the county commissioners under the provisions of defendant's charter to have his damages assessed. The petition alleges that defendant company "entered upon, took and detained for its own use for the purposes set forth in said act of incorporation (meaning defendant's charter) the water of said Duck brook, as more fully appears by the notice of location published by said corporation . . . . and by the plan therein referred to."

This petition, fairly interpreted, means damages for the taking of water through the twenty-four inch pipe before mentioned out of the lake, above the outlet, whereby the flow of Duck brook was diminished. To be sure, water had previously been taken from the brook below the lake, and for this damages had been paid. But by condemnation proceedings the Water Company limited its right to water from the lake by means of the twenty-four inch pipe, and for that damages could only be assessed. The lake was eminent domain, and, for that taking, mill owners on the stream had not suffered, in law, any damages, because the state had seen fit to grant only its own, without reserving any condition in favor of the riparian owners on the stream, as it might have done. *Auburn* v. *Union Water Power Co.*, 90 Maine, 576. Here, as in that case, the grant was for the taking of water for domestic purposes. How the use can curtail the power of the legislature is not plain, so long as it had not already made some grant of the water to others.

For this taking, however, the Water Company paid $2100, and the plaintiff released all his claim for damages in the premises, by which he is firmly bound. He asserts that defendant company has made use of the water for purposes other than authorized by its charter. The use, however, does not concern him. The volume

may. That is measured by the capacity of the contrivance by which the water may be taken.. He must have his damages measured by the largest possible volume that it can divert. No other rule for the assessment of damages would work complete compensation. *Ingraham* v. *Camden Water Co.*, 82 Maine, 335; *Howe* v. *Weymouth*,, 148 Mass. 605; *Proprietors* v. *Randolph*, 157 Mass. 345.

For many years there existed an old dam at the outlet of Eagle Lake that the owners of the Hamor mill had been accustomed to use in regulating the flow of water so as to give a head at their mill. The plaintiff claims an easement in this dam, for his more convenient use of the water, acquired by adverse use for a long period by the owners of the mill. The evidence does not establish such easement; and if it did, it became an interest in the dam that was extinguished by the taking of it under the exercise of eminent domain, granted by the charter of defendant company, wherein a method is provided for the assessment of damages therefor. These damages were a full compensation for all persons having any title to the dam or the land on which it stands, and all such are confined to this remedy to the exclusion of all others. The taking of the old dam and the land on which it stood was clearly within the scope of the original charter, and the maintaining of a new dam in its place so as to raise the level of the lake and increase its storage capacity was authorized by Act of 1895, c. 299. By raising the water in the lake littoral owners only could suffer injury, and their damages were provided for by the act. The new dam raised the outlet some three feet, and held the water at that level, but did not divert it. No more water was thereby taken from the stream than the capacity of the twenty-four inch pipe would divert. That quantity might be taken, even if no water should be left to flow in the natural channel. The natural flow was substantially the same with the new dam as with the old or without any dam. What the plaintiff wants is not the natural flow, but an intermittent flow. This he is not entitled to by means of another man's dam that does not disturb the natural flow. There is no phase of the case that can give the plaintiff damages.

Indeed, he seems to have received already more than the law would have accorded him, and he should be satisfied therewith.

*Judgment for defendant.*