### In Re Barre Water Company.

January Term, 1900.

Present : Rowell, Tyler, Start, Thompson and Watson, JJ.

Opinion filed August 30, 1900.

*Eminent domain—Taking waters—Damages to owners of water powers—*The taking by a water company of water from one of two converging streams, without the abandonment of a previously acquired right to take water from the other, injures the owners of water powers below the point of confluence to the full extent of the additional right to take.

*Same—Return of water in form of sewage—*The fact that waters diverted from a stream by a water company are, in the form of sewage, returned by the city to which they are furnished, to the stream from which they are taken above water powers affected by their diversion, cannot be taken into consideration in determining the damages to the owners of such powers by the diversion, the disposition of the sewage being wholly within the control of the city.

Petition brought by the Barre Water Company to take waters in the exercise of the right of eminent domain.ᷓ Heard on the report and supplemental report of commissioners, motions to set aside and re-commit the same and exceptions thereto, Washington County, March Term, 1898, *Munson*, J., presiding. Motion to set aside and re-commit and exceptions to reports over-ruled. Reports accepted, and judgment on reports for nominal damages to certain petitionees who excepted.

*W. E. Barney* for the petitioner.

*W. A. Boyce* and *Frank J. Martin* for the petitionees.

WATSON, J.   Prior to the bringing of the petition in this case, the petitioner, the Barre Water Company, had the right to take water from Jail Branch, to the capacity of a 16-inch pipe, for the purpose of furnishing the Village (now City) of Barre and the inhabitants thereof, with water for the extinguishment of fires, and for sanitary, domestic, and other purposes.   In 1888 it constructed a suitable dam or reservoir on that stream and laid a 16-inch main pipe therefrom to the then Village (now City) of Barre, and laid and constructed mains and service pipes in and about the village, sufficient to supply it and the inhabitants with water for the purposes above named, and has since, from time to time, extended the pipes as the public good and the convenience and necessity of individuals have required.   Since that time the number of inhabitants of Barre has greatly increased, also the number of persons taking water from such supply, and the demand for public purposes.   Since the reservoir was constructed, six mills with dams have been built above it on Jail Branch, and all the refuse and sewerage therefrom passes into the stream.   About a mile or a mile and a half above the reservoir is the Village of East Barre with a population of several hundred inhabitants, nearly the entire growth of which has taken place since the construction of this water system, and the drainage therefrom is necessarily into the same stream.   The commissioners find that, for these reasons, the waters of the stream have become and are unsuitable for domestic purposes, and that a new supply ought to be furnished by the petitioner.

It is proposed by the petitioner to take, under these proceedings, by an independent pipe, the waters of Scott Brook, and of Peck Pond Brook, both being tributaries of Steven's branch of Winooski river, and to construct a large reservoir at some point below Peck Pond, and a small one on Scott Brook from which to carry the water to the large reservoir, and lay a 12-inch pipe from there to the City of Barre to connect with the present mains.

Steven's Branch and Jail Branch converge at the upper end of the city and form one stream. The commissioners find that the waters proposed to be taken are suitable for domestic uses, and the reservoir so located as to afford proper and reasonable supply and facilities, both for domestic and fire purposes, for the present and the probable future needs of the city ; that at times of low water, and of anchor ice in the stream, the supply from Jail Branch for fire purposes is liable to fail or become insufficient for the proper protection of the city ; and they recommend that the petitioner be permitted to take the waters of Scott Brook and of Peck Pond Brook, as proposed in the petition, and convey the same through its reservoir to the City of Barre for the purposes named in its charter.

Prior to the hearing before the commissioners, the petitioner purchased and secured deeds of conveyance of the riparian rights of some of the land-owners, and the several sums awarded to the mill-owners above the confluence of Jail Branch and Steven's Branch, have been accepted and paid. The case therefore, stands in this court, upon exceptions by the owners of mills and water powers below the confluence.

The commissioners state that the new supply sought to be had is to be used as a substitute for the waters of Jail Branch, by reason whereof the owners of mills and water power below the confluence of the two branches, will not be materially affected, and therefore find for them to recover nominal damages only, with an alternative finding, in case the court should be of the opinion that damages should be awarded them upon the basis of an appropriation and actual taking and diversion of all the waters of Scott Brook and of Peck Pond Brook, irrespective of the fact that such taking would relieve Jail Branch to the extent of the quantity so taken. If, in fact, the right to take water from Jail Branch were to be permanently abandoned by the petitioner, a different question would be presented, and one upon which we now express no opinion. But the petitioner still retains the right to take water therefrom through the 16-inch pipe, and it is

not its purpose to abandon that privilege. Hence, the mill and power owners are injured to the full extent of the maximum capacity of the proposed 12-inch pipe,—the quantity of water that may be diverted,—and they should be awarded damages accordingly. *Leonard* v. *Rutland*, 66 Vt. 105; *Bailey* v. *Woburn*, 126 Mass. 416; *Howe* v. *Inhabitants of Weymouth*, 148 Mass. 605; *Hamor* v. *Water Co.*, 92 Me. 364.

Nor is the fact that a portion or all of the sewerage from the city is discharged into the stream above the property of the mill-owners, an element to be taken into consideration in determining the amount of damage suffered by them. The right acquired is exercised by the diversion of the water for the purposes named in the charter, and after the water is used for such purposes and converted into sewerage, the disposition thereof is wholly with the city. The sewerage is within the control of the city, and may be changed by it at any time, as the public good and necessities may require; and the mill-owners would have no voice, other than that incident to the right of citizenship in common with the other inhabitants, regarding the system, its location, or the place of its outflow. *Fisk* v. *Hartford*, 69 Conn. 375.

*As the commissioners failed to assess damages upon a proper basis, the case should be remanded that the report may be re-committed upon that question.*