**PERKINS et ux. v. STATE.**

No. 10913.

Court of Civil Appeals of Texas. San Antonio.

March 19, 1941.

J. Q. Henry, of Mission, for appellants.

Robert E. Kirkpatrick, of Mercedes, for appellee.

SMITH, Chief Justice.

This is a proceeding by the State to condemn a strip of land belonging to Oscar S. Perkins and wife in West Addition to Sharyland, in Hidalgo County. The strip, seven feet wide and comprising twenty-three hundredths of an acre, is a part of a thirty-acre tract, on which the Perkins maintain their home, as they have all the while for the past thirty years. It was condemned for use in widening an existing State highway along the front of the Perkins property. The jury awarded the owners $165 for the land and improvements actually taken, and $50 as damages to that remaining. The Perkins have appealed.

Appellants do not question the validity of the condemnation proceedings. They complain here, only, that the award was inadequate, and that certain evidence was erroneously admitted over their objections.

It appears that the condemned strip included the outer seven feet of the Perkins' front yard. When asked what improvements were on that section of the strip, appellant Oscar S. Perkins testified:

"A. Well, it would be hard to describe, Judge, because thirty years living there and growing those things. There are several palms, six or seven palms ranging in size, oh, they are various sizes; some of them are three feet in diameter. A pecan tree planted from the seed some twenty-odd years ago, that is now an immense tree there. A number of hackberry trees, they are grand yard and shade trees; they are at the gate entrance, and also further up the fence is an ash tree and a perennial honeysuckle in front of the house, a hundred and fifty feet across there; I have grown that for years and it is a very fine trained honeysuckle hedge or fence there. Then, I have some rose bushes just north of the garden, on the north side of the garden and to the south side; a city water pipeline up in there, included in the condemnation part of it, and several smaller trees, kumquat trees, and so forth, and other ornamental things that would be destroyed entirely in that seven feet that is proposed to be appropriated by the highway.

"Q. Do you have an irrigation ditch on the premises? A. Yes, sir; there is an irrigation ditch on the east side of the fence along the south side of the house; then, turning north, the one turning north, that would be in the purported condemnation piece of land.

"Q. That would be condemned in this strip? A. That ditch turning north would be condemned in this strip of land proposed to be appropriated; yes, sir."

Now, in the course of the trial the court permitted the resident district highway engineer to testify, on direct examination by the State, and over appellants' objections, as follows, as stated in appellants' brief: "I am familiar with the general policy of the State Highway Commission with reference to the construction and maintenance of state highways and I now state that the present policy of the Commission is not to remove from highway rights-of-way ornamental shrubs and trees unless we consider them hazardous to traffic. The present policy of the Commission is to plant ornamental trees and shrubs along state highways rather than to remove those already growing and in place. We never remove these plants unless we are forced to as a safety measure. The Department does remove trees and shrubs from state highways when we consider them hazardous to traffic. It is true that we exercise complete dominion and control over the entire right-of-way and I consider that the State has the right to remove all trees and shrubs if the Commission sees fit to do so, without obtaining permission from the adjacent owner. I cannot state what the future policy of the Commission may be, but am confining myself to our present policy which is to plant ornamental trees and shrubs along the highway rather than to remove those already there. The policy of some future Commission may be the opposite, for all I know now. When condemned and taken the State could exercise full control over the land taken and the trees and shrubs thereon."

It is deemed pertinent to observe here, that notwithstanding this testimony, the fact remains, nevertheless, and as a matter of law and of course, that title to and right of present possession of the land and everything on or under it that could affect its use for highway purposes, have been taken from appellants by the State, without reservation, leaving no rights therein to the Perkins; so that the Highway Department may go in there today or tomorrow, or any day, clear the land of every growing thing or improvement, fill up the irrigation canal, remove the water line, and subject every inch of the strip to active highway purposes, to the complete exclusion of the Perkins forever.

The State extended this inquiry during the trial, and in cross-examining appellant Oscar S. Perkins, counsel for the State asked him and he answered:

"Q. I want to know what you were taking into consideration; you are assuming that the State Highway Commission is going to remove everything off that seven foot strip, are you not? A. Yes, sir.

"Q. You would have an entirely different idea if they were going to leave those trees there? A. If they were going to leave them as it is, yes; without doing anything."

Like questions were propounded in various forms by the State to numerous witnesses for appellants, as well as those for the State, on the issue of compensation.

The testimony complained of was elicited for the consideration of court and jury in

measuring the compensation to be awarded appellants. It was designed to minimize the award and measure the compensation by the value of the land condemned, and the damage to that remaining, *as if the improvements thereon were to be left for appellants' use and enjoyment indefinitely, if not for all time.* The testimony was elicited for the frank purpose of inducing the jury to *reduce* the award in view of the assumed current policy of the Highway Department to leave the condemned strip to appellants' use and enjoyment. The theory was, to further elaborate, that the injury to appellants was not so great as it would be if the condemned strip was to be at once shorn of improvements; that so long as the improvements were left intact and appellants' access thereto undisturbed, appellants would not be injured, and their damages must be limited accordingly. This theory was given the implied sanction of the trial judge by his admission of the testimony over appellants' objections.

Appellants objected to that testimony, and to the quoted testimony of the district engineer, on the obvious grounds, in effect, that it was immaterial; that the State was taking complete control and right of possession of the property, leaving none to appellants; that appellants were entitled to compensation measured by the value of the property taken and injury to that left, unaffected by the purely speculative consideration that the State may not at once deprive appellants of the use and enjoyment of the land and improvements included within the condemnation; that the testimony was highly prejudicial to appellants. We sustain appellants' contentions.

The question presented does not seem to have been decided, directly or by satisfactory analogy, in any reported Texas case. It has been decided in other jurisdictions, however, and the rule most generally adopted, and which we approve, is defined in Corpus Juris: "The probability that the appropriator will not exercise, or the fact that there is no present intention of exercising, to the full extent the rights acquired, should not be considered in reduction of the damages, where there is nothing to prevent a full exercise of such rights, since the presumption is that the appropriator will exercise his rights and use and enjoy the property taken to the full extent." 20 C.J. 768, § 227.

It is said in 10 R.C.L. 66, § 58: "If the land, 'in its corporeal substance and entity,'

is property, still, all that makes this property of any value is the aggregation of rights or qualities which the law annexes as incidents to the ownership of it. The constitutional prohibition must have been intended to protect all the essential elements of ownership which make property valuable. Among these elements is, fundamentally, the right of user, including, of course, *the corresponding right of excluding others from the use."* (Italics supplied.)

Analogous cases from other states are: Drainage Com'rs of Dist. 8 v. Knox, 237 Ill. 148, 86 N.E. 636; Smith v. Concord, 143 Mass. 253, 9 N.E. 642; In re Barre Water Co., 72 Vt. 413, 48 A. 653; Highway Com'rs of Town of Ross v. Chambers, 265 Ill. 113, 106 N.E. 492; New Jersey I. & I. R. Co. v. Tutt, 168 Ind. 205, 80 N.E. 420, 421; St. Louis, K. & N. W. Ry. Co. v. Clark, 121 Mo. 169, 25 S.W. 192, 906, 26 L.R.A. 751.

We think the testimony complained of was improperly admitted and plainly prejudicial to appellants upon the principal issue.

The judgment is reversed and the cause remanded.