ANNA PIERCE ET AL., APPELLEES, V. PLATTE VALLEY PUBLIC POWER AND IRRIGATION DISTRICT, APPELLANT.

11 N. W. (2d) 813

FILED NOVEMBER 19, 1943.   No. 31620.

*August Wagner, William P. Kelley* and *M. E. Crosby,* for appellant.

*Shotwell & Vance, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, CHAPPELL and WENKE, JJ.

MESSMORE, J.

Platte Valley Public Power and Irrigation District filed an application in the county court against Anna Pierce et al., representing it to be a public corporation organized and existing under the laws of Nebraska, and clothed by law to exercise the right of eminent domain; that it was organized for the purpose of creating a public power district to engage in the electric light and power business, within the meaning of chapter 86, Session Laws of Nebraska for 1933 (Comp. St. Supp. 1933, secs. 70-701 to 70-715, inclusive) ; that the applicant requires a right of easement over the lands of the defendant, Anna Pierce, with the privilege to enter on, construct, reconstruct and maintain the structures and line, and trim and remove underbrush and trees to safe clearance and operate said electric transmission line upon, along and over the real estate; that the applicant "does not desire the fee title to said easement; the owners retain the use of said land under said line, around and between the structures;" the applicant remains "obligated and hereby agrees to pay all damages that occur during the construction and will pay all future crop damages in the mainte-

nance and reconstruction of said line. All such damages to be due and payable immediately after they occur. The right of ingress and egress acquired herein shall be exercised in the manner suggested by the occupant of said premises. If the applicant deems that manner improper, then it will confine its entire entry within 50 feet on each side of the center line of said easement. The rights herein acquired are limited for the duration of the war plus six months, but in no event longer than April 2, 1947, and to a distance of 50 feet on each side of said center line. The applicant agrees to remove said structures and restore the land as nearly as may be on or before April 4, 1947."

Appraisers were appointed, and an award was made in favor of Anna Pierce in the sum of $375, and to the tenants Flynn in the sum of $15, which was accepted, and the motion to affirm the Flynn award was sustained by the district court. No further pleadings were filed in the district court, and the matter was heard before a jury. Plaintiffs were awarded the sum of $333.33. Motion for a new trial was overruled, and Platte Valley Public Power and Irrigation District appeals to this court.

The plaintiffs (hereinafter referred to as appellees) own 80 acres of farm land, adaptable to the production of corn, east of Valley, Douglas county, Nebraska, lying north and south. The right of way and easement condemned is a strip 2,018 feet long by 100 feet wide, the point of entry being located in the south boundary line of this land, close to the southwest corner, then extending 2,080 feet diagonally northeast across the south forty to a point in the east boundary of the tract. The appellant has erected on this strip three wooden, two-pole, three-cable structures; the first parallel to the center line at a point approximately 593 feet northeast of the point of entry, the second 625 feet northeast of the first, and the third 575 feet northeast of the second one, as shown by the transcript and exhibits.

At the time of the condemnation proceedings, the premises were occupied by a tenant, rent being reserved by the appellees of one-half of the crops delivered to the elevator.

There is some question about the term of the lease, C. R. Pierce, the husband, testifying that it was a year-to-year lease. There was evidence disclosing the loss in production, due to the construction of the line and the reasons for the loss, which need not be set out.

The appellant contends that the application filed in the county court terminates at a specific date and specifies that all construction, replacement and crop damage will be due and payable immediately after they occur, confining its evidence solely to the production of the farm and not to the value of the farm before and after the construction of the transmission line. It contends that the court should have instructed that the amount of recovery is the difference between the rental value before and after the line was constructed for the period of the easement. Appellant states that the amount of land used is insignificant; that six poles cover less than six square feet. It is conceded that this court has adopted the rule that for permanent easements the measure of damages in transmission line cases is the difference in the value of the land before and after the construction of the line; contending that in this case, where there is a temporary use, the principle calls for an instruction fixing the damages at the difference in the rental value of the farm before and after the construction of the transmission line, and that nothing should be allowed for the loss of crops; that this case is submitted upon an application, which amounts to an agreement by the parties to defer such future damages, and, no objection being made to the application to defer such damages, they are automatically deferred, citing the rule: Parties will, as a rule, be restricted in the appellate court to the theory upon which the cause was prosecuted or defended in the court of original jurisdiction. The only issue in the district court was the amount of damages.

In the case of *United States Nat. Bank v. Loup River Public Power District,* 139 Neb. 645, 298 N. W. 529, this court said: "While it is true that the proceedings for condemnation in the beginning are not in the nature of an ac-

tion at law, yet it does not follow that, when an appeal is taken from such proceedings to the district court and the case is there docketed, such action constitutes the beginning of an action in the generally accepted sense. But for the appeal, the award of the appraisers would be final and there never would be any proceedings in the district court. Consequently, it is the appellant who is responsible for instituting the action in the district court, even though by statute the parties in a condemnation action are designated in the reverse order from what they appear to be in the proceedings in the county court." The court further said:

"The fact that a petition was filed in the district court by condemnee cannot change the rule, because the filing of that petition was not essential or necessary. This court has, in a number of cases, held that, where on appeal the only question is the amount of damages, no pleadings are necessary. *Fremont, E. & M. V. R. Co. v. Meeker,* 28 Neb. 94, 44 N. W. 79; *Trester v. Missouri P. R. Co.,* 33 Neb. 171, 49 N. W. 1110. Since no petition was necessary, plaintiff could not acquire any additional rights by the filing of same." The appellant's statement in its application does not change the rule. There was no agreement as to deferment of damages, as contended for by appellant.

This court in *Gledhill v. State,* 123 Neb. 726, 243 N. W. 909, held: "Where land, no part of which is taken, is temporarily damaged by a temporary public improvement, the measure of compensation is not the market value but the value of the use for the period damaged." In the opinion we said (p. 730) that "where one's land is damaged temporarily for public use by the construction of a public improvement by the state, it constitutes such a damage as requires compensation under section 21, art. I of the Constitution," which reads: "The property of no person shall be taken or damaged for public use without just compensation therefor." The opinion quotes from 20 C. J. 740, as follows: "Where land is taken, not to be held permanently, but only for temporary use, the measure of compensation is not the market value, but what the property is fairly worth for the time

during which it is held, and the same rule applies where property, no part of which is taken, is temporarily injured."

Courts have held that the value of the use of land is the rental value; on the other hand, it has been held that the rental value is not the proper damage. In the opinion in *Gledhill v. State, supra,* at page 738, we said: "The best available test of the value of the use of the land to the lessee is the value of the crops which could and would have been grown upon this land, particularly where it is removed from speculation and remoteness and made definite and certain by proof as to what portions of the land and similar adjoining land produced." The *Gledhill* case sets forth the rule on the measure of damages, to be followed in the instant case.

Section 21, art. I of the Constitution of Nebraska protects the appellees in that their property "shall not be taken or damaged for public use without just compensation therefor," and, in this connection, the owner of the property taken or damaged must be compensated in the original condemnation proceedings, and the owner of property taken or damaged is entitled to have all proper elements of damage considered by the commissioners, and, on appeal, by the jury. See *Snyder v. Platte Valley Public Power and Irrigation District,* 140 Neb. 897, 2 N. W. (2d) 327.

We are not in accord with the appellant's position that damages are deferred; nor, in view of the holding in *Gledhill v. State, supra,* are we in accord with the measure of damages as contended for by the appellant.

The appellant contends that the court erred in admitting the evidence of the appraisers to testify as to the damages after counsel for appellees had informed the jury that they were the appraisers.

This court in *Langdon v. Loup River Public Power District,* 142 Neb. 859, 8 N. W. (2d) 201, held that "in future condemnation litigation, evidence of the award of appraisers shall not be admissible as evidence to go to a jury."

Appraisers may testify in condemnation proceedings as any other witness when proper foundation has been laid,

with the restriction as set out in *Langdon v. Loup River Public Power District, supra.*

Appellant contends that the court erred in admitting the evidence of appellee C. R. Pierce, who testified as to the danger in working about the high voltage transmission line; that there was no proper foundation laid to qualify him as such witness. The witness was one of the plaintiffs, 82 years of age; had been on the farm both before and after the transmission line was constructed; had served in the capacity of foreman for the Western Union Telegraph Company, built lines, set poles and directed mechanics for that company for 30 years. He testified that his practical experience in constructing lines during such period of time was in several states where there was a break; that he had not only constructed but had repaired lines and helped to build an electric plant in Omaha in 1883. He further testified that from actual experience he had the opportunity to learn about construction lines and the mechanics of construction, installation and dangers incident to power lines. He had had occasion to make a study and observation of insulation, grounding and the purpose of grounding, had attended a school for that purpose, and was required to pass an examination before he could become a foreman; that, in addition to the study made in such work, he had occasion to observe the dangers incident to one being in and about the power lines, where wet surfaces were contacted.

Reviewing the foregoing evidence, it is obvious that the witness was unacquainted with safety devices or lightning arresters, or oil surface breakers on modern construction. His experience was foreign to the safety of transmission lines, such as in the instant case. He was permitted to testify that the lines are dangerous. He did not know the spark over distance from a 65,000 volt line. He was asked: "Now, Mr. Pierce, can you tell the Jury what would be the danger to a person working in and about that power line with metal during the time it is damp and wet?" to which there was a proper objection. "A. Now, you take a machine of any kind, you take a cornpicker, and you take any

apparatus like that, and you get against those poles when it is wet, maybe it is misting, or raining a little, and you are driving that, it will kill you just as sure as shooting; that is all there is to it." Motion was made to strike this testimony which was overruled. The testimony of this witness was prejudicial and should not have been admitted under the applicable rule hereinafter set out.

In *Wahlgren v. Loup River Public Power District,* 139 Neb. 489, 297 N. W. 833, this court held:

"General fear, or fear which is not connected with or an incident of knowledge of present or potential danger, cannot be made the basis upon which to predicate depreciation in the market value of land.

"The only fear which may be considered as an element in fixing value is that of danger, the present or potential existence of which is grounded in authentic observation and experience, or in scientific investigation, and which fear circumscribes activity or limits freedom of use in the area of the present or potential danger, and which tends to lessen the market value of the land." See, also, *Dunlap v. Loup River Public Power District,* 136 Neb. 11, 284 N. W. 742, and cases cited.

We have discussed the assignments of error deemed necessary to clarify the issues on a retrial.

The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED.

YEAGER, J., participating on briefs.