TEXAS POWER & LIGHT COMPANY v. V. E. GLADYS COLE ET AL.

No. A-6625. Decided April 30, 1958.
Rehearing overruled June 11, 1958.
(313 S.W. 2d Series 524)

*Burford, Ryburn & Ford,* and *Clarence A. Guittard,* all of Dallas for petitioner.

The Court of Civil Appeals erred in holding that the power and light company could not reduce the rights taken by amended or supplemental pleadings after making its deposit of twice the amount of damages assessed by the special commissioners, but before entered upon the property for the construction of its power line. Thompson v. Janes, 151 Texas 495, 251 S.W. 2d 953; St. Louis, K. & N. W. Ry. Co. v. Clark, 121 Mo. 169, 25 S.W. 192, 26 L.R.A. 751; Gulf Coast Irr. Co. v. Gary, 118 Texas 469, 14 S.W. 2d 266.

The Court of Civil Appeals also erred in holding that the charge instructing the jury that respondents would have the right to remove gravel after the erection of the electric power line was a comment on the weight of the evidence. State v. Carpnter, 126 Texas 604, 89 S.W. 2d 194; Texas Power & Light Co. v. Hill, Texas Civ. App. 27 S.W. 2d 842; Texas P. & L. Co. v. Hering, 148 Texas 350, 224 S.W. 2d 191.

*Eades & Eades and Eric Eades,* all of Dallas, for respondents.

In reply to petitioner's points of error cited Gulf, C. & S. F. Ry. Co. v. Brugger, 59 S.W. 556; State v. Miller, 92 S.W. 2d 1073; Brazos River Conservation v. Adkisson, 173 S.W. 2d 294.

MR. JUSTICE NORVELL delivered the opinion of the Court.

This is a condemnation case. Articles 3264 et seq., Vernon's Ann. Texas Stat. Special commissioners appointed by the judge of the County Court at Law of Dallas County, No. 1 awarded defendants $750.00 for an electric transmission line easement over their property. Defendants objected to the award and appeal to the County Court at Law, No. 1 where, after a trial to a jury, the award was reduced to $557.00. The defendants

appealed and the Court of Civil Appeals reversed and remanded. 306 S.W. 2d 762. We reverse the judment of the Court of Civil Appeals and affirm that of the County Court at Law No. 1.

The case turns upon the interpretation and validity of a supplement or amendment to the petition in condemnation which supplement was filed in the County Court at Law after proceedins before the Special Commissioners had been completed and the case had been removed to the Court by the filing of objections to their award. Article 3266, Sec. 6.

In the Court of Civil Appeals, E. Gladys Cole, and husband Earnest Cole, and Willie A. McGlothin, (respondents here) presented four points of error. There is no question of fundamental error in the case. Ramsey v. Dunlop, 146 Texas 196, 205 S.W. 2d 979; McCauley v. Consolidated Underwriters, 157 Texas 475, 304 S.W. 2d 265. The majority of the Court of Civil Appeals construed three of these points as involving "the question of whether appellee (Texas Power & Light Company, petitioner here) having taken possession of the condemned property on December 5, 1955, could thereafter limit its taking and minimize the amount of damages to be paid, by providing in the judgment that appellants might carry on operations for the removal of sand and gravel free of any interference until May 1, 1957." 306 S.W. 2d 766.

From the brief filed in the Court of Civil Appeals and the reply to the application for writ of error we are not entirely certain that this was the exact contention raised or intended to be raised by respondents. For that reason it is deemed appropriate to set out the points presented in the Court of Civil Appeals which are substantially the same as the counter-points contained in the reply to the application for writ of error, viz:

"1.   The trial court erred in permitting appellee's pleadings, evidence, arguments and in charging the jury with reference to market values and damages at a time long after the easement was condemned on December 5, 1955.

"2.   The trial court erred by commenting upon the weight of the evidence in charging the jury that after May 1, 1957, appellants would still have the right to enter upon said lands and carry on operations for removal of sand and gravel since such charge assumes the existence of facts not in the record, singles out this theory of appellee's case so as to give it undue

prominence and indicated to the jury that the court was of the opinion that such gravel could in fact be removed.

"3. The trial court erred in allowing appellee to plead, introduce evidence upon and argue to the jury that the purposes for which the easement was condemned do not require any intereference with th appellants' rights to enter upon the land for the purpose of removing sand and gravel therefrom until May 1, 1957, and that appellee would make whatever arrangements that may be necessary to permit such operations.

"4. The trial court erred in charging the jury that the easement condemned did not include the right to interfere with appellants' right to enter upon the land for the purpose of removing sand and gravel until May 1, 1957."

It appears that in 1946, petitioner Texas Power & Light Company, secured an easement over a five and a half acre tract owned by respondents for the purpose of erecting and maintaining electric transmission lines. This easement described a strip of land 100 feet in width. The easement sought in this proceeding was described as being over a fifty foot strip lying immediately west of the 1946 easement. The pleadings upon which the case was ultimately submitted to the jury consisted of an original petition (in which the appointment of Special Commissioners was requested) and a supplemental petition which was filed in the County Court at Law after the commissioners had completed their duties. In the original petition the fifty foot strip was located in reference to the then existing easement and described as:

"* * * an easement and right of way over and across defendant's said land for an electric transmission line, together with the right of ingress and egress over a strip of land 50 feet wide, being 50 feet on West side of the center line above described, for the purpose of constructing, reconstructing, operating, inspecting, patrolling, maintaining and removing said line and appurtenances, and the right to remove from said strip and prevent the construction thereon of any building or other structure, except fences and also to remove therefrom all growth other than crops, shrubs and fruit trees less than 15 feet high, which, in the sole judgment of plaintiff, may endanger or interfere with the efficiency, safety, or convenient operation of said transmission line and its appurtenances. However, plaintiff shall have no right to occupy permanently any part of said strip, except the portion occupied by the structures constituting its

transmission line above described, and shall have no right to fence or enclose said strip, or to use it for any purpose other than as aforesaid, and the right of defendants and subsequent owners of said land to cultivate said strip, raise crops thereon, or use it for pasturing live stock or for any other purpose, not inconsistent with plaintiff's enjoyment of the easement and right of way above described, shall not be obstructed or interfered with, except to the extent above stated.

"The right of ingress and egress aforesaid shall not include the right in the future, after the original construction of said transmission line to destroy or damage any crops, fences or other property of defendants or of any subsequent owner of said land without payment to defendants or said owners of reasonable compensation; provided, however, that no compensation need be paid for the removal from said strip of buildings or other structures, or of growth, other than crops, shrubs, and fruit trees less than 15 feet high, which may endanger or interfere with said line, as aforesaid."

The transmission lines and the poles, frames and cross arms supporting them together with the rights incident thereto were described as follows in the petition:

"Said transmission line to be erected on said land shall include not more than three conductor wires, and not more than two static wires, together with one H-Frame, no single poles, no guy anchorages, no angle structures.

"Each H-Frame shall consist of two poles connected by one or more cross arms.

"Cross arms shall be fastened upon poles of said transmission line at a height sufficient to insure a minimum clearance of 22 feet between the lowest conductor wire and the ground at any point in the span. The conductor wires and static wires shall be sustained in the air by attachments to said cross arms, and said transmission line shall include such poles, braces, bolts, pins, insulators, and other fasteners, appliances and attachments as may be necessary and proper for attaching said cross arms to said poles and said wires to said cross arms and said poles to the ground."

After the case reached the County Court at Law, petitioner filed a pleading which it denominated a Supplemental Petition in which it said that:

";Plaintiff says that the purposes for which the easement described in its original petition is being taken do not require any interference with defendants' right to enter upon the land in question for the purpose of removing sand and gravel therefrom until May 1, 1957. *Consequently, plaintiff says that until such date, said easement shall be subordinate to defendants' right to enter upon said land for such purpose,* and plaintiff will make whatever arrangements may be necessary to permit such operations." (Italics ours).

In his charge to the jury the trial judge described the easement rights according to the allegations of the original petition hereinabove set out and in addition gave the following instruction relating to the restriction upon the easement set forth in the supplemental petition:

"You are further instructed that the easement taken does not include the right to interfere with defendant's right to enter upon said strip of land or upon any adjoining land for the purpose of removing sand and gravel therefrom, until the 1st day day of May, 1957, and that until that date plaintiff will make whatever arrangements are necessary to permit such operations, and, further, that after the 1st day of May, 1957, defendants will still have the right to enter upon said land and carry on operations for the removal of such sand and gravel, so long as such operations do not interfere with the construction, maintenance and operation of said electric transmission line."

This instruction was followed by four special issues patterned after those suggested in State v. Carpenter, 126 Texas 604, 89 S.W. 2d 194, 979. In all of these issues the date of inquiry as to ascertainment of market value was December 5, 1955. Special Issues 1 and 3 referred to the reasonable market value of the severed strip covered by the easement and of the remaining part of respondents' land, respectively, immediately before the taking of the easement on December 5, 1955, while Special Issues Nos. 2 and 4 refer to such values immediately after the taking on said date.

■ The parties are seemingly agreed that the controlling date in the ascertainment of damages is December 5, 1955. Petitioners say that was the date submitted by the trial court. The respondents contend, however, that the trial judge's instructions with reference to the restriction of the easement contained in the supplemental petition had the effect of permitting the jury to ascertain market value and damages at a time long after

December 5, 1955. We are unable to agree with this argument. It is seemingly based upon the proposition that petitioner's rights in and to the property were to be measured alone by the easement description contained in the original petition. If this premise be accepted and it be concluded therefrom that no enforceable restrictions as to the use of the easement could arise from the filing of the supplemental petition, then, of course, the special instruction of the court as to the dominent use of the premises for gravel mining purposes until May 1, 1957 and petitioner's jury arguments concerning the same would constitute mere representations as to what use the condemning authority hight make or intend to make of the easement and such cases as Perkins v. State, Texas Civ. App., 150 S.W. 2d 157, wr. dism., would be applicable; but here we have a decree of court which definitely restricts the use that may be made of the easement by the condemnor. It may not under its easement rights interfere with respondent's gravel mining operations until after May 1, 1957. Should it attempt to do so it would be subject to the legal processes of the courts as a trespasser. An obviously different situation was presented in Perkins v. State, supra, wherein it appeared that the State Highway Department under the easement sought to be condemned would have an absolute right to remove ornamental trees and shrubs from the right of way, yet the trial judge allowed a witness to testify that it was the policy of the Department to leave such trees and shrubs undisturbed when they did not constitute traffic hazards.

■ The above holding for the most part disposes of respondent's contentions raised in the Court of Civil Appeals. Neither that court nor this court is authorized to reverse a trial court's judgment in the absence of a properly assigned error or one which can properly be classified as fundamental and the complaint that the charge constitutes a comment on the weight of the evidence is effectually answered by the holdings heretofore expressed. The extent of the easement with which the special commissioners were concerned was admittedly different from that considered by the jury in the County Court at Law. It was the function of the petition to describe the nature and extent of the easement required. An amendment as to the easement rights was effected by the filing of a supplemental petition in the County Court at Law. It thereupon became the duty of the judge of that court to explain in detail the extent of the easement sought to be condemned in order that the jury might properly evaluate the value of both the fifty foot strip and the balance of the tract exclusive of the strip before the taking, as well as afterwards. Such instructions accurately describing the required easement

and the incidents thereto can hardly be said to constitute a comment upon the weight of the evidence. Such contention overlooks the circumstances that the rights of the easement holder and the owner of the real property were fixed by court decree and that the non-interference with respondent's gravel operations was controlled by such decree and not subject to the volition or whim of the easement holder. Again we meet the distinction between this case and Perkins v. State, Texas Civ. App., 150 S.W. 2d 157, wr. dism.

Respondents in their reply to the application for writ of error seek to support the judgment of the Court of Civil Appeals upon authority of Brazos River Conservation & Reclamation District v. Allen, 141 Texas 208, 171 S.W. 2d 842, which was relied upon by the lower court in holding that "If appellee (petitioner) did not need to disposssess appellants (respondents) of their right to mine gravel until May 1, 1957, it should not have taken possession of the property on December 5, 1955 under terms which did not leave any such right to appellants. Appellee's attempt thereafter to partially abandon its taking in order to reduce the damages resulting from the taking on December 5, 1955 certainly would, if allowed, result in prejudice to the owners."

The majority of the Court of Civil Appeals considered the supplemental petition as an attempt to effect a partial abandonment or reduction of the easement rights and holds that such reduction cannot be allowed because of prejudice accruing to the landowner.

One of the justices dissented from this view saying that:

"The supplemental petition simply made less extensive the rights included in such easement. Appellee had not take actual possession of the land at time of filing supplemental petition; and, for that matter, took no steps toward building its transmission line at any time before the trial. A condemner can abandon the taking of property, in whole or in part, after it makes its deposit and secures right of possession provided the status quo can be restored. Surely the landowner cannot claim prejudice here, the status quo not having been disturbed, and appellants in the mentioned points do not even assert prejudice." [ 306 S.W. 2d 767.]

The respondents in their reply take the position that petitioner acquired the full and complete right of use, possession

and control of the easement with no reservations or limitations on December 5, 1955 and that the amendment by supplemental petition "was improper because it did not seek to reduce any rights taken, abandon any property or to dismiss any such rights."

As to these conflicting contentions, we are disposed to agree with the dissenting justice. As stated in respondent's reply brief, "The principal value of the land over which the easement was taken was for sand and gravel excavation, such values ranging from $1,572.50 according to respondent's witness to $1,007.50 according to petitioner's witness, while its value for other purposes ranged from only $784.00 to $487.50." It further appears that the feasible and economical way to develop the property would be through the use of a dragline to remove the overburden and extract the sand and gravel from the land. However because of the crane used in connection with the dragline, it would be hazardous to employ such machine when the transmission lines were carrying a heavy load of electricity. The building of the towers called for in the easement description and the stringing of wires thereon, so long as they were not charged with electricity, would not materially interfere with dragline operations, but if the lines were actually used for electric transmission purposes the power would have to be shut off in order that dragline operations could be carried on with safety. Under the easement rights as amended by the supplemental petition the petitioner was bound to subordinate its use to the gravel mining operations of respondents until May 1, 1957.

■ On December 5, 1955, petitioner deposited $1,500.00 with the County Clerk of Dallas County which was double the amount of the award of the special commissioners. It thereupon became entitled to make use of the easement in accordance with the description of the rights relating thereto which were set forth in the original petition. It *could* have lawfully interfered with gravel mining operations of respondents in making use of the easement. However, the judgment of the County Court at Law rendered in May of 1956 and based upon the amendment of the easement rights effected by the supplemental petition expressly subordinated petitioner's use to such gravel mining operations as might be undertaken by respondents. The use of the property for the removal of gravel therefrom remained dominant over the use for electric-transmission purposes until May 1, 1957. The judgment cannot be construed as vesting additional rights in the petitioner. On the contrary, the amendment was a relinquishment or abandonment of certain rights to which petitioner

would have been entitled under the easement description contained in the original petition. Undoubtedly a condemnor has the right to dismiss as to a portion of the land sought to be condemned or to relinquish rights originally sought by condemnation of an easement when this may be done without injury to the landowner. Thompson v. Janes, 151 Texas 495, 251 S.W. 2d 953; Armendaiz v. Ray, Texas Civ. App., 215 S.W. 2d 210, no writ history. In this case no prejudice to respondents was shown. At the time of trial, petitioner had not physically occupied the fifty-foot strip and had made no installations thereon that would interfere with respondents' mining operations. Under the terms of the judgment, respondents were allowed a year to mine their gravel. No complaint is made as to the period of time allowed in the judgment nor of the shift in the position of the uses to which the land would be subjected under the Court's decree. The essence of respondents' argument is that the "taking" evidenced by the deposit of money on December 2, 1955, was irrevocable, and the easement rights could not thereafter be diminished by action of the condemnor.

In our opinion, Brazos River Conservation and Reclamation District v. Allen, 141 Texas 208, 171 S.W. 2d 842, 845, does not support this position. That case did not involve a mere relinquishment of an easement right, but it appears that the condemning authority sought to dismiss the entire condemnation proceedings, not with the idea of abandoning the project but for the purpose of instituting a new action and attempt to secure an easement by paying less money for it. This Court said:

"In seeking to dismiss the first condemnation suit and withdraw the deposit in October, 1940, the District was not undertaking to abandon the purpose of taking the property. The dam and reservoir were so nearly completed that the District was compelled to acquire the land that was not in a position to surrender the right to take possession, the virtual possession, that it had acquired by invoking the jurisdiction of the court and making the deposit and it neither offered nor intended to surrender it."

It is not the policy of the law to encourage economic waste. The petitioner under the original easement or the amendment thereto never acquired any rights to the gravel upon the property, but the respondents at all times remained the owners thereof. As the land's chief value lay in the sand and gravel deposits thereon, any relinquishment of easement rights which would enable respondents to utilize their property for mining pur-

poses would militate against economic waste. An arrangement whereby the gravel could be mined and sold is to be preferred to one which would force the condemning authority to pay for the same and yet not be in a position to realize any benefit therefrom. If it were unnecessary for petitioner to interfere with mining oprations until such time as its lines should be actually utilized in transmitting electricity, it seems that an amendment of the easement rights was called for and could be considered in the nature of a correction. Brazos River Conservation and Reclamation District v. Allen, 141 Texas 208, 171 S.W. 2d 842. A condemnor should not be required to take more land than it needs nor secure unnecessary easement rights, and prior to confirmation of the special commissioners' award or other judgment of the Court, the condemning authority, in the absence of some showing of prejudice to the landowner (which we here fail to find) should be allowed to abandon such unnecessary lands or rights. Thompson v. Janes, Texas Civ. App., 245 S.W. 2d 718, affirmed 151 Texas 495, 251 S.W. 2d 953.

The recent case of Union Electric Company v. Levin, St. Louis Court of Appeals, Missouri, 304 S.W. 2d 478, 482, is a persuasive authority supporting petitioner's position here. The Court held that an electric power company was entitled to amend the description of the easement by reducing the extent thereof. In the course of the opinion, it was said:

"The question remains, however, whether amendment of a petition should be allowed in a proceeding for condemnation whereby the rights or privileges sought by the condemner are reduced and limited, and after judgment granting the condemnation has been rendered, the award of the Commissioners has been paid by the condemner, and possession and use of the easement have taken place; and if so, how and when. * * * *.

"It must be recalled that while appellant did take possession of the easement to the extent that it did erect and is maintaining wires over the respondents' land, it has not as yet, according to the evidence, availed itself of any right which respondents contend appellant had, and which, if so, appellant desired to forego by amendment, to erect or maintain transmission wires *underground* on respondents' land.

"The question at hand was exhaustively discussed and, we believe, positively settled so far as the instant case and the law of Missouri are concerned in St. Louis, K. & N. W. Ry. Co. v. Clark, 121 Mo. 169, 25 S.W. 192 and on Rehearing, 25 S.W. 906,

908, 26 L.R.A. 751. In that case the condemner, a railroad, after condemnation, paid into Court the award of the Commissioners for the damages incurred by the defendants by the right-of-way and appropriated the land condemned. At the trial the condemner offered into the record a stipulation to construct and maintain two crossings for the use of the landowners, not required by the petitioner or the statutes. * * * In the main opinion in that case the Court said [25 S.W. at page 198]: 'The company had the undoubted right to elect, as it did, to take a strip 50 feet instead of 100 feet in width; and, if it sees fit to reserve two open crossings for the defendant's use, we can see no reason why the reservation may not be made and the damages then assessed on the bases that defendant retains that interest in the land. The statute very justly and properly places restrictions upon the exercise of eminent domain, but it does not follow by any correct reasoning that the condemning company is bound; in all cases, to go to the full extent of the law.'

"That the proper time and method of reducing the rights sought in a condemnation suit by the condemner would be at the trial of the issue of damages before a jury, and by way of amendment to the petition, was held in Shell Pipe Line Corporation v. Woolfolk, 331 Mo. 410, 53 S.W. 2d 917, 918, wherein the Court said that the condemner may appropriate less than the full rights available under the law, and if he does, that fact is a proper element to consider on the issue of damages; that his purpose to exercise less than his full rights should appear with a reasonable certainty 'in the petition or be brought in the way of amendment thereto.' In that case the condemner sought to establish a reduction of the appropriation by mere proof that the condemner did not and would not fence in rights-of-way. This the Court held was not sufficient, but such reduced easement should have been by way of amendment to the petition. Cases cited based on oral promises to limit the rights and privileges specifically pleaded are to be distinguished from the instant case."

This is not a case in which a mere oral unilateral representation as to future use by the condemning authority is involved, nor is it one in which the landowner has accepted the award of the special commissioners and upon that basis seeks to compel the payment to him of the money deposited with the County Clerk. To the contrary, the respondent landowners appealed to the County Court at Law and as petitioner has exercised no actual dominion over the premises which would interfere with respondents' mining of gravel, the petitioner was entitled to

reduce his easement rights by amendment in the County Court at Law. For a general discussion of "Right to abandon and effect of abandonment of eminent domain proceedings," see South Carolina State Highway Dept. v. Bobotes, 180 So. Caro. 183, 185 S.E. 165, 121 A.L.R. 1, and annotation following in A.L.R.

The judgment of the Court of Civil Appeals is reversed and that of the County Court at Law No. 1 is affirmed.

Opinion delivered April 30, 1958.

MR. JUSTICE SMITH dissenting.

I respectfully dissent. I think the argument and authorities contained in respondents' reply to the application for writ of error so clearly state my views that it is not amiss to adopt portions of such argument as my dissenting opinion.

For the purpose of this opinion I adopt the following statement:

Petitioner filed its original petition for condemnation on November 14, 1955. This petition described the property to be burdened and described the rights and uses which petitioner would have in the erection and maintenance of its transmission line.

The petition prayed for immediate condemnation of such permanent easement with no limitation as to time with respect to the beginning of the use or the duration thereof.

The commissioners duly made and entered their decision and award.

Thereafter on December 5, 1955 the petitioner in order to enter upon and take possession of the easement condemned in accordance with Article 3268, paid double the amount of the award into the registry of the Court, as shown by the certificate of deposit.

It was also stipulated the date of the taking was December 5, 1955.

Respondents duly filed their objections and perfected their appeal to the County Court at Law.

On April 30, 1956, several months after the date of the commissioners' award and almost five months after the date of the taking of said easement, respondent filed what it called a supplemental petition for the first time asserting that its condemnation did not require interference with respondents' right to enter the land for the purpose of removing sand and gravel until May 1, 1957, and promising to make any necessary arrangements to permit such operations.

Respondents filed motion to strike such pleadings and special exceptions which were overruled.

The principal value of the land over which the easement was taken was for sand and gravel excavation, such value ranging from $1,572.50 according to respondents' witness to $1007.50 according to petitioner's witness, while its value for other purposes ranged from only $784.00 to $487.50.

Counsel for petitioner made an opening statement to the jury to the effect that petitioner would not actually use the easement until May 1, 1957, and that respondents had until that time to remove their sand and gravel and that petitioner would do anything necessary to permit them to remove same. Respondents objected to such statement and remarks, but same was overruled.

During the trial petitioner was permitted to cross-examine defendants' witness, Bob Dunn, over respondents' objections, with reference to the possibility or probability of respondents removing the sand and gravel prior to May 1, 1957.

Petitioner was permitted, over objections of respondents, to introduce testimony of its witness, P. G. Wallace, with reference to the offered right of respondents to remove said sand and gravel prior to May 1, 1957.

Petitioner was permitted, over respondents' objections, to introduce testimony of its witness, John R. Hill, Jr., relating to respondents' right to remove sand and gravel prior to May 1, 1957.

The trial court in its charge to the jury defined the easement taken and added to such definition, over respondents' objections, the specific instructions that the easement taken did not include the right to interfere with respondents' right to enter upon such strip of land for the purpose of removing sand and

gravel until May 1, 1957, and that petitioner would make whatever arrangements that may be necessary to permit such operations and that after such date respondents still had the right to enter upon the land and remove sand and gravel so long as such operations did not interfere with the construction, maintenance and operation of the electric transmission line.

The trial court permitted petitioner's counsel to argue to the jury, over respondents' objections, that petitioner was not going to interfere with respondents' right to remove the sand and gravel before May 1, 1957, and that petitioner would do everything necessary to allow them to remove such gravel.

The jury returned their verdict finding the amount of damages sustained by respondents, and based thereon the court entered judgment condemning said easement and fixing said damages to be awarded to respondents.

The Court of Civil Appeals reversed and remanded the cause sustaining all of respondents' points on appeal.

It is stipulated that the date of taking was December 5, 1955. The date of taking in this case was fixed, not only by the deposit of damages, but by the express stipulation of the parties. Market values must be determined as of that date.

The Court of Civil Appeals correctly held that the land or interest in land taken by condemnation must be definite and clear and must be paid for at the date of the taking and the damages must be computed as of such date. See Miers v. Housing Authority of City of Dallas, 266 S.W. 2d 487 (Texas Civ. App.) ; Loumparoff v. Housing Authority of City of Dallas, (Texas Civ. App.) 261 S.W. 2d 224.

Article 1, Section 17, of the Constitution of Texas requires payment "when taken," thus making the date of taking the time when damages must be reckoned.

In Gulf C. & S. F. Ry. Co. v. Brugger, 24 Texas Civ. App. 367, 59 S.W. 556, the Court held it was error to charge the jury in such a way as might lead them to believe they could assess the damages with reference to the values of the land at a date other than the date of taking.

It is clear that the trial court deprived respondents of their legal right to recover their damages as of the date of taking,

December 5, 1955, by reason of the fact that throughout the trial petitioner was permitted to show and contend that respondents would suffer no damage until May 1, 1957, and under the pleadings allowed, the evidence introduced, the charge of the court, and the arguments of counsel the jury was prevented from answering the special issues submitted to them with reference to the market value of the land immediately before and after the taking of the easement on December 5, 1955.

In one breath the court asked the jury to find the market values immediately before and after the easement was condemned on December 5, 1955, but, in the next, the court tells the jury not to consider the easement to be taken until May 1, 1957, at least as far as the value of the sand and gravel are concerned, and that is the principal value of the land.

The petitioner condemns and takes the easement as of December 5, 1955, but says to respondents that it will not need the easement until a later date and therefore respondents are relegated to their damages as of such later date. This is not the law.

The jury compensation guaranteed by the Constitution for the condemning of property must be measured by the rights taken at the time they are taken, and cannot be minimized or mitigated by the fact that the condemnor will not or probably will not exercise to the full extent the rights so acquired or will not do so until a later date.

Thus, it is established that a condemnor may not condemn and take property on one date and then have the damages fixed at a later date. This is precisely what petitioner did in this case in the trial court. The trial court clearly erred in allowing the pleadings, proof and arguments to the effect that damages should be ascertained at a date other than December 5, 1955, the date of taking, and clearly erred in so charging the jury.

Petitioner apparently argues that since it had not yet begun the construction of its improvements on the land at the time of trial, that market values and damages could be determined at the later date of May 1, 1957. This contention clearly ignores the stipulated fact that the date of taking was December 5, 1955, and is contrary to the law which fixes the date of taking on such date when the required deposit was made.

The Court of Civil Appeals correctly held that the issues of

market values and damages must be determined as of the date of taking.

The petitioners have not in any way reduced any rights taken by the condemnation and there was no abandonment of any of the property or easement rights acquired by the condemnor. Therefore the petitioner has failed to bring itself within the rule announced in Thompson v. Janes, 151 Texas 495, 251 S.W. 2d 953.

Petitioner has not abandoned all or any part of the easement condemned. All of the original uses taken by petitioner by its original condemnation remained after the filing of its amendment. None of the burdens of the easement or the uses to be made of the land were abandoned, nor was the area of the burdened land diminished. The amendment only sought to postpone the time when petitioner would begin its construction and use of the easement in its original form.

Thus, this is not a case where a part of the land or a part of an easement has been abandoned, and the cases cited by petitioner wherein the actual taking of the land was abandoned and the condemnation dismissed have no application here.

In every case cited by petitioner the condemning authority decided that it actually did not want to take the land or a particular part of same and sought dismissal of the proceedings as to such land, and the Courts rightfully held that the condemnor could not be forced to take such land.

But there is no such abandonment here or dismissal of any part of the land or easement. Here petitioner only sought to limit the time in the future it would begin to use the full easement rights previously acquired.

Petitioner is not asking the right to give up any part of the easement it acquired—it really is asking for a "delayed condemnation". It acquired the full and complete easement on December 5, 1955, and then later it does not give up or abandon any of such rights, but merely states and promises it will not use any of such rights until May 1, 1957, in an attempt to make the date of taking as of such latter date.

Petitioner seeks to change well settled law as to measurement of damages from the date of taking to the date of using.

In practically every condemnation case, whether it be for an easement or otherwise, the actual improvements are not constructed by the condemnor until sometime in the future, that is, some time after the date of taking. This interval between the time of the date of taking and the date when the improvements are actually constructed should never be considered as changing the well settled rule that the damages must be ascertained as of the date of taking. Nor should such interval of time vary the rule that damages are to be measured by the purpose to which the property is to be put.

Under our condemnation laws title to the property condemned, whether fee simple, limited or an easement, must be vested in the condemning authority and divested out of the owner; and since this remedy is a harsh one, the law requires full, complete and adequate compensation to be paid as of the time said property is condemned. Public policy demands that such compensation and damages be ascertainable as of a definite time.

If the rule contended for by petitioner were the law, nothing but utter confusion could result, for the parties, the commissioners, and the Courts could never be sure of when the measure of damages or values would be reckoned. There is always some time interval between the beginning of the condemnation proceedings and the actual start of construction or use of the property or easement taken—sometimes perhaps only a few days while in other cases a year or more may so elapse. This is the very reason for the sound rule that damages must be fixed at a time certain, to wit, at the time of taking, and the time when the construction or use actually begins can have no bearing upon the matter.

Only the condemnor can decide when to begin the proceedings, when to take the easement, when to deposit the payment into Court and when to actually construct the improvements or put the easement to use. The condemnee has no choice or discretion in regard to these matters—his only remedy being that of securing just compensation.

If the condemnor does not require reasonably immediate use of the easement, it should delay the institution of the proceedings, or it may delay the date of taking and forego its right to immediate possession and not make the statutory deposit.

But once the condemning authority has completely exercised

its right to acquire the title to the easement condemned, it should not be allowed to fix the damages or values at a later date.

It must be remembered the Texas Power & Light Company completed its taking of this easement on December 5, 1955, and at that time acquired the full and complete right of use, possession and control of the easement, with no reservations or limitations.

The Court of Civil Appeals correctly held that such amendment was improper since it did not seek to reduce any rights taken, abandon any property or rights or to dismiss any such rights.

In Brazos River Conservation & Reclamation District v. Allen ,141 Texas 208, 171 S.W .2d 842, 845, this Court pointed out that while a condemnor has a right to correct its errors, abandon the purpose of taking and do dismiss the proceedings for condemnation so long as it does not prejudice the rights of the landowner, that it may not take any action which does not amount to such an abandonment of dismissal merely for the purpose of reducing the damages to be paid. The Court pointed out that the action of the District in that case (filing a second proceedings on the same land) was not an "undertaking to abandon the purpose of taking the property" and there was no intention to abandon the proceeding within the meaning of the rule first stated.

In Thompson v. Janes, supra, this Court stated that a condemnor who has not taken possession had a right to dismiss the suit "if the project is to be abandoned or the location changed" or it might dismiss as to a portion of the land "when it decides that its purposes may be accomplished with less land than was initially sought."

Here, however, petitioner did not seek the abandonment or dismissal of any of the land or easement rights within the rule contended for by petitioner. When land is condemned, compensation must be paid for all of the land taken including minerals, gravel, improvements, or any other items that go to make up its value. The landowner is entitled to such damages as may be occasioned by the easement as to all of the land over which it is taken, not just a part. The jury was not given an opportunity to find the value of the land immediately after the condemnation of the easement as burdened by such easement. The testi-

mony conclusively shows that as of December 5, 1955, the date of taking, the gravel could not be removed from under and around the electric transmission line.

The majority opinion fails to recognize that, although a public authority may force a sale of property or an easement for a public purpose, it cannot compel an owner to sell or dispose of a part of such property (gravel in this case) to a third party and then sell the remainder to the condemnor. The petitioner recognized this rule when it filed its original petition for condemnation on November 14, 1955. In that petition it sought immediate condemnation of a permanent easement for an electric transmission line. In the petition the uses by which the land was to be burdened were described. No reservation or recognition of any rights to the condemnee (landowner) inconsistent with petitioner's easement uses were contained in the pleadings. Yet, without the abandonment of any of the easement uses thus obtained on December 5, 1955, the trial court permitted the petitioner to file supplemental pleadings which in legal effect deprived the landowner of a fair trial and operated to his prejudice. It permitted the condemnor to go to the jury armed with the charge, of the court and forcefully argue a market value not in keeping with that permitted by State v. Carpenter, 126 Texas 604,89 S.W. 2d 194, 979. I know of no case in this or any other jurisdiction that has gone so far afield as the present case. To allow the petitioner to take the easement on December 5, 1955, and then to mitigate the damages by later offering to allow respondents to remove the gravel prior to May 1, 1957 violates all the rules and principles which have governed condemnation proceedings at least since State v. Carpenter, supra. The trial court, over the objections of the respondents, charged the jury as follows:

"You are further instructed that the easement taken does not include the right to interfere with defendant's right to enter upon said strip of land or upon any adjoining land for the purpose of removing sand and gravel therefrom, until the 1st day of May, 1957, and that until that date plaintiff will make whatever arrangements are necessary to permit such operations, *and, further, that after the 1st day of May, 1957, defendants will still have the right to enter upon said land and carry on operations for the removal of such sand and gravel, so long as such operations do not interfere with the construction, maintenance and operation of said electric transmission line.*"
(Emphasis added)

This was a charge upon the weight of the evidence. It was harmful to the respondents in that it told, or at least intimated to the jury that respondents would in fact be able to remove the sand and gravel before May 1, 1957, and if not removed before that, but after the construction of the power line, the respondents could still remove the sand and gravel. The charge was a direct comment that the date of taking was May 1, 1957 rather than December 5, 1955. The record conclusively shows that the sand and gravel cannot be removed after the construction of the line. The damages cannot be reduced after the taking by the fact that the condemnor permits the landowner to make some use of the condemned premises after condemnation. See 75 American Law Reports, pp. 857, 861, 863; 29 C.J.S. p. 1015, Sec. 155, 35, Eminent Domain; Little v. Loup River Public Power District, 150 Neb. 864, 36 N.W. 2d 261, 7 A.I.R. 2d 355. What we have is equivalent to an unaccepted promise and no more. The majority leaves the landowner at the mercy and subject to the unilateral control of the petitioner. As was said in Pierce v. Platte Valley Public Power & Irrigation District, 143 Neb. 898, 11 N.W. 2d 813, a case quoted with approval by the Supreme Court of Nebraska in Little v. Loup River Power District, supra, the "Proprietary rights reserved to the owner of the fee are to be distinguished from unaccepted promises of the condemner to do something in the future for the benefit of the owner * * *. There is a distinction between an appropriation subject to rights of the land owner excepted therefrom and left unaffected thereby in him and an attempt to impose unaccepted promissory stipulations and proposed agreements by the condemning party in respect to undertakings to be performed subsequent to the time of the appropriation. The unaccepted promise or proposal to do something in the future upon the happening of some contingency does not affect the character or extent of the rights acquired or the amount required to be paid as just compensation." The owner cannot be compelled to accept a mere offer, neither can he be compelled to sell to a third party, a part of his property.

The majority opinion is against public policy in that the market values of the properties involved must be fixed at a definite time. In the event the majority opinion becomes the law, nothing but confusion can possibly result. The time interval between the date of taking (December 5, 1955, in this case) and the date when actual use of the land begins (in this case, I assume May 1, 1957) would necessarily be considered as a right reserved to the landowner, although his right to contract had long since passed. The opinion places upon the landowner the

onerous duty to salvage what he can in order to minimize the damages. In our case the undisputed evidence shows that the highest value to be placed upon the land involved can be attributed to the gravel. The only issue in the case was the value for gravel purposes. The charge of the court permitted the jury to *ignore all evidence of the value of any gravel which would be lost after the line was constructed.*

This case should be reversed and remanded for a new trial.

Opinion delivered April 30, 1958.

Rehearing overruled June 11, 1958.