**SABINE RIVER AUTHORITY of Texas,**
**Appellant,**

**v.**

**M. P. CRABB et ux., Appellees.**

No. 16272.

Court of Civil Appeals of Texas.

Dallas.

Nov. 1, 1963.

Allen Clark, Greenville, H. P. Kucera, City Atty., and N. Alex Bickley, First Asst. City Atty., Dallas, for appellant.

Olin P. McWhirter and Bruce Graham, Greenville, for appellees.

BATEMAN, Justice.

Our former opinion is withdrawn, and the following substituted therefor.

Appellant condemned 357 acres of land owned by appellees, and appeals from the judgment of the county court awarding the owners $53,550 for the surface rights and $17,850 as damages to the mineral interest in the property. The commissioners appointed by the county judge had awarded appellees $28,560 for "the fee simple title" to the land on March 10, 1958. On March 12, 1958 the appellees filed their objections to the award. In their answer appellees alleged that the mineral rights had a value of $100 per acre and that the surface was worth $150 per acre for pasture and farming purposes. This pleading was not amended, but on the day of trial, February 18, 1963, the parties entered into a written stipulation as follows:

"It is agreed and stipulated by and between the parties hereto that the Plaintiff, Sabine River Authority of Texas, will not seek to condemn or take any minerals or mineral rights in and under the land described in this proceeding, but that all such minerals and mineral rights shall be reserved to the Defendants, M. P. Crabb and wife, Kathryn Crabb, their heirs and assigns, and that any judgment rendered herein shall be limited to the sur-

face rights only in and to the property sought to be condemned herein.

WITNESS OUR HANDS at Greenville, Texas, this 18 day of February, A. D., 1963.

(s) Allen Clark
Attorney for Plaintiff

(s) Bruce Graham
Attorney for Defendants"

The three special issues submitted to the jury and their answers thereto, upon which the judgment was based, are as follows:

"SPECIAL ISSUE NO. ONE:

"What do you find from a preponderance of the evidence was the market value of the surface rights of the 357 acres of land belonging to the defendant and taken by the plaintiff, Sabine River Authority of Texas, as of September 3rd, 1959?

"ANSWER: $150.00 Per Acre.

"SPECIAL ISSUE NO. TWO:

"What do you find from a preponderance of the evidence to have been the market value of the minerals in and under the 357 acres of land to be covered by and taken for lake and reservoir purposes, immediately before such taking?

"ANSWER: $100.00 Per Acre.

"SPECIAL ISSUE NO. THREE:

"What do you find from a preponderance of the evidence to have been the market value of the minerals in and under the 357 acres of land to be covered by and taken for lake and reservoir purposes, immediately after such land was covered by water?

"ANSWER: $50.00 Per Acre."

By its first point of error on appeal appellant asserts that the verdict is so contrary to the great weight and preponderance of the evidence as to be mani-

festly unjust. This point is briefed together with the second, to the effect that the verdict is the result of passion, bias and prejudice; and they will accordingly be considered together by us. In doing so we are required to weigh and consider all of the evidence, including that which supports the verdict as well as that which does not. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. Such evidence may be summarized as follows:

The appellee Crabb, a chiropractor, first expressed the opinion that the 357 acres were worth $300 per acre, based upon other sales in the area at that time, and when asked about such sales of comparable land he told of three sales; one of 56.44 acres for $372 an acre, another of 69 acres for $216 an acre, and a third of 47 acres at $244.50 an acre, but admitted that they were above the "take line" of appellant and did not know whether they were bought for the purpose of development or whether they have been developed. By way of qualifying himself to give his opinion concerning the value of the minerals he said that he had had "quite a bit" of experience in drilling oil wells, having drilled "several" and having some "very small" production of his own. When asked by his attorney if he knew the market value of minerals in that area, he said: "I don't see how you would put a market value on minerals exactly." He added that he knew of only one royalty being sold in that territory and that was for $250 an acre. He then said he thought the minerals were damaged because the production in that country is deep and to drill a well "it definitely would be much more expense to whip it under the middle of that lake now than it would have been without the lake there." Then, over appellant's objection that it was hearsay, Dr. Crabb was permitted to testify that he had in his pocket a driller's bid from Lowe Company in Midland with an estimate that it would cost from seventy-five to a hundred thousand dollars more money to drill a well directionally "like it would have to be" than to drill it on dry

land. He then said he had assisted in drilling nine wells over a period of about seven years, and knows of the increase in the cost of drilling a well at a slant to get under a specific tract of land, and that he considers these estimates he received to be conservative. Upon returning to the stand after the lunch recess the witness confessed to having an opinion as to the values of the minerals under his land immediately prior to September 3, 1959, which was $250 an acre; that he had an opinion as to the value of the minerals under the land after it was covered by the lake or reservoir, and that it was $50 an acre; and on cross examination then said that the entire value of his farm was $550 an acre "before they took it," but that he does not know of any land in Hunt County that sold for $550 an acre.

Appellees' only other witness was a Mr. Tarpley, who was qualified as an expert and who said his opinion of the value of the surface of the tract in question was $150 per acre. He did not testify as to the value of the minerals. In telling of five sales of comparable land, ranging from $125 to $165 an acre, he did not disclose whether there were any mineral reservations in those sales.

Appellant produced two witnesses, B. B. Banner and Wayne Y. Anderson, both of whom qualified as experts. Banner testified that in his opinion the entire value of the land was $80 an acre, and Anderson said that in his opinion different parts of the farm had different values and that the total value was $21,380 (an average of $59.60 an acre) and that this includes the fee.

■ We are unable to say that the jury's response to Special Issue No. 1 was so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly wrong or unjust. In finding the value of the surface at $53,550 or $150 per acre, the jury followed the testimony of the expert witness, Tarpley, and declined to follow that of appellant's expert

witnesses or that of appellee Crabb. This they had a right to do, and we have no right to substitute our views for the jury's finding.

▮ This brings us to an appraisal of the uncorroborated testimony of Dr. Crabb, the only evidence offered as to damage to the minerals. He did not at any time testify that he knew what such values were, merely that he had an opinion as to what they were. The entire basis for this witness' opinion consisted of (1) his having known of one sale "in that territory" for $250 an acre (without disclosing whether the royalty sold was under producing or speculative property, nor how near it was to his property, nor when nor under what circumstances the sale was made) and (2) his hearsay information as to increased drilling costs which would be made necessary by the inundation of the land. We hold that this opinion, based as it was on inadequate experience and hearsay information, was not sufficient evidence to support the jury findings in response to Special Issues Nos. 2 and 3, and that the findings are so contrary to the preponderance of the evidence as to be clearly wrong and unjust. The first point is therefore sustained as to the findings in response to Special Issues Nos. 2 and 3, purporting to establish the amount of damage to the minerals, but is overruled as to the finding of value of the surface in response to Special Issue No. 1.

▮ We are unable to say that any of the jury findings were the result of passion, bias or prejudice. A careful search of the entire record reveals no evidence thereof. Appellant's second point is therefore overruled in its entirety.

▮ In its third and ninth points of error appellant submits that when the landowner agreed to the aforesaid stipulation permitting him to retain the mineral rights he did so subject to the rights of appellant, which had nearly four years previously condemned the surface for reservoir pur-

poses, and that the mineral estate is therefore not the subject of any taking or damaging, it being a distinct interest in land separate and apart from the surface estate; and that it was therefore fundamental error for the court to submit Special Issues Nos. 2 and 3; also that since no part of the mineral estate was taken, under the Texas Constitution, Article 1, Sec. 17, Vernon's Ann.St., there can be no damage to the remainder because there is no remainder. Quoting from appellant's brief: "In order for damages to be recovered, at least some portion of the estate must be taken. The purpose of the stipulation was to eliminate this from the lawsuit." We agree. The petition in condemnation and the award of the commissioners contemplated the condemnation of the entire fee in the land. Even so, appellant had the right at any time before trial to relinquish part of its legal power and condemn a lesser estate than the fee in order to minimize the cost to the condemnor as well as to avoid condemning property or rights in property for which there was no public need. Texas Power & Light Co. v. Cole, 158 Tex. 495, 313 S.W.2d 524. It is obvious that this was the intent and purpose of the stipulation the parties signed just prior to the trial. Appellees must be charged with notice that their farm would be largely if not entirely covered by water when they reserved their mineral rights by the stipulation. In fact, the evidence shows that at the very time of the stipulation all of the land but forty or fifty acres was already inundated.

▮ Moreover, it appears from the record that appellant deposited the amount of the award into the registry of the court on September 3, 1959, at which time "the taking" occurred within the meaning of the statute. Appellant took the fee on that date, and thereafter, on February 18, 1963, by the stipulation surrendered to appellees an interest in the property taken, to-wit, the mineral estate; and appellees must be held to have taken that property right burdened as it was by the flooded condition of the

surface. Accordingly, appellant's third and ninth points are sustained.

We have carefully examined the remaining points of error contained in appellant's brief and, finding them to be without merit, overrule them.

The jury finding of damages of $53,550 for the taking of the surface rights of appellees' farm being supported by competent evidence, that part of the judgment based thereon is affirmed. For the reasons hereinabove assigned, that part of the judgment awarding $17,850 as damages to the minerals is reversed and here rendered for appellant.

Affirmed in part and reversed and rendered in part.