### FORT WORTH & D. S. P. RY. CO. v. GILMORE et al. (No. 3118.)

Court of Civil Appeals of Texas. Amarillo. Nov. 28, 1928.

Rehearing Denied Feb. 6, 1929.

Bledsoe, Crenshaw & Dupree, of Lubbock, for appellant.

Schenck & Triplett, of Lubbock, for appellees.

RANDOLPH, J. This is the second appeal in this case. The opinion of this court on the other appeal will be found in 2 S.W.(2d) 543.

On this last trial of the case in the county court, it was submitted to a jury on special issues and on the answers of the jury, the trial court rendered judgment for the defendant, and plaintiff appeals.

This was a condemnation proceeding instituted by the railway company to condemn defendant's land for its right of way. The commissioners impaneled to appraise the land awarded to the owner of same the sum of $1,-450, and, on the first trial in the county court, the defendant owner recovered judgment for $3,237.50. On this last trial in the county court, the jury awarded defendant the sum of $2,615 for the depreciation in value of the land not taken, in addition to the amount given him for the land actually taken by the railway for its roadbed.

On the issues submitted to them on this last trial, the jury found: That the fair cash market value of the land actually taken, at the time it was taken, was $60 per acre; that the defendant's land not actually taken by the railroad for its right of way was damaged by the construction and operation of the railroad; that the difference between the cash market value of defendant's land not taken, as it was immediately before the railroad entered it, and the fair cash market value thereof, with the railroad through it, is $2,-615.

The defendant put on witnesses to testify as to the market value of the land, but did not himself testify to such market value. These witnesses testified that the value of the land taken, and of that not taken, immediately before the railroad entered upon it, was $75 per acre, and that the land not taken was depreciated in value from $15 to $20 per acre. While the defendant was on the witness stand in his own behalf, the plaintiff offered to prove by him the value of the land in controversy as given in his renditions for taxation for the years 1925, 1926, and 1927, to which the defendant objected upon the ground that such evidence was immaterial and irrelevant and did not go to prove the market value, that the value of land rendered for taxation is not the same as the market value, and that the question of the value of land for taxation purposes is regulated more by the necessity of raising finances than by the market value. These objections were sustained by the court, and the evidence offered was excluded from the jury.

■This evidence was admissible as a declaration against interest, and the trial court erred in excluding it. While, under the custom of rendition for far less than the value of property, this evidence has little, if any, probative force, yet our courts have held it admissible. State v. Doom (Tex. Civ. App.) 278 S. W. 255, and authorities therein cited; Boyer & Lucas v. St. Louis, S. F. & T. Ry. Co., 97 Tex. 107, 76 S. W. 441, 442; Trinity & B. V. R. Co. v. Orenbaum (Tex. Civ. App.) 173 S. W. 531; Crystal City & U. R. Co. v. Isbell (Tex. Civ. App.) 126 S. W. 47; Gulf, C. & S. F. R. Co. v. Koch (Tex. Civ. App.) 144 S. W. 1035.

■ The trial court submitted to the jury, along with certain special issues, a charge which is clearly a general charge, and which is too extensive to be set out here. Article 2189, Revised Civil Statutes, requires a trial court in submitting a case upon special issues, to submit along therewith only such *explanations* and *definitions* of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues. Texas & N. O. Ry. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188, 190; F. W. & D. C. Ry. Co. v. Amason (Tex. Civ. App.) 239 S. W. 359, 362.

■ The trial court charged the jury that the words "cash market value" do not mean the amount merely that could be procured for property at forced sale; that they mean the amount of money that an ordinarily prudent person desiring to sell, but not bound to do so, could, within a reasonable time, procure for such property from a person who desires to buy, but is not bound to purchase, the property. This was objected to and a special issue tendered in its place. As the case has to be sent back for retrial, we suggest that the definition as given would be sufficient if "an ordinarily prudent person" was omitted.

The appellant presents, under its fourth proposition, the following: "Prospective damages from the possible poisoning in the future of Appellee's land by Johnson grass from the Appellant's right of way not being an element of damages properly recoverable in a condemnation suit, the Trial Court erred in failing to exclude evidence with reference thereto from the consideration of the jury and in failing to instruct them that in estimating the damages, they could not consider for any purposes the testimony with reference to such matters."

By its fifth proposition, it urges error as follows: "It appearing on cross-examination that the witness Sanders' estimate of damages to the land taken was based in part upon an improper element of damages, i. e., the possibility of Johnson grass being scattered upon the land by the Appellant in the future, and the witness refusing to separate such improper element of damages from the proper elements of damages, the Trial Court should have excluded his estimate of damages entirely from the consideration of the jury."

It appears from the record that the witness Sanders was on the stand in behalf of the defendant, and that he testified upon direct examination that in his opinion the crossing of said land by the railroad would depreciate the value of the remaining lands between $15 and $20 per acre. Upon cross-examination by plaintiff's counsel, the witness testified that he based his estimate of

depreciation upon the inconvenience on account of the way the land would be cut and also on account of Johnson grass that might be brought in by the railroad, and that part of his estimate of a $15 to $20 per acre depreciation was based on the prospective Johnson grass intrusion. When the witness so testified, appellant's counsel then asked him what part of the $15 to $20 depreciation he figured was on account of prospective Johnson grass, and the witness replied that he could not tell how much of said damages was caused by the prospective Johnson grass, and, after the witness has stated that he could not separate the element of damages on account of Johnson grass, counsel for plaintiff moved the court to exclude all of his testimony as to such depreciation, which the court refused to do.

■ The defendant's (appellee's) reply to this proposition is: "Where a party to a suit injects testimony into the case, which testimony is in answer to questions propounded by such party, he has no right to move to exclude such answer simply because the answer is not favorable to the party interrogating." We are of the opinion that the rule invoked by appellee does not apply to the question before us. Where a witness has testified that he knew the market value of land and that in his opinion the entrance of the railroad upon the land would cause a depreciation in the value thereof, to cut the plaintiff off from testing the basis of such opinion as to the depreciation would result in the opinion of the witness, however erroneously formed, becoming unassailable. The premise upon which his opinion is formed was not stated in the direct examination. The plaintiff had the right to test the ground upon which he based his opinion by cross-examination of him. When it appeared that his opinion was based upon an element of damage not recoverable in a condemnation suit, the plaintiff had a right to move to exclude the witness' testimony as to the depreciation, the witness' opinion having been formed on elements of damage not recoverable in this character of proceedings, and he did not forfeit the right to do so by testing the witness. Wolf Cigar Stores Co. v. Kramer (Tex. Civ. App.) 89 S. W. 995, 996.

■ The appellee was entitled to recover damages only for such injuries as were capable of ascertainment at the time the railroad company took over the land—that is, damages that were direct and certain. Uncertain, contingent, or speculative damages are not recoverable in such an action. 15 Cyc. 715–717; 8 R. C. L. 438; Texas Pipe Line Co. v Hildreth et al. (Tex. Civ. App.) 225 S. W. 583, 584; Stephenville, N. & St. Ry. Co. v. Moore, 51 Tex. Civ. App. 205, 111 S. W. 758; Perry v. Railway Co. (Tex. Civ. App.) 238 S. W. 276; Jefferson County Traction Co. v. Wilhelm (Tex. Civ. App.) 194 S. W. 448.

Article 6401, Revised Civil Statutes, provides a penalty against a railroad company that allows Johnson grass to go to seed upon its right of way, by penalizing it in the sum of $25 at the suit of any person leasing or controlling land contiguous to such right of way, together with such additional sums as such owner, etc., may have been damaged thereby.

■■ It has been held by our courts that this statute provides an exclusive remedy. Bangle v. M., K. & T. Ry. Co. (Tex. Civ. App.) 140 S. W. 374; Vance v. Southern Kansas Ry. (Tex. Civ. App.) 152 S. W. 743. It has also been held that under the common law an action will not lie against a railroad company for allowing noxious weeds to grow on its right of way unless it actually conveyed the noxious seed to the adjoining premises. San Antonio & A. P. Ry. Co. v. Burns, 39 Tex. Civ. App. 32, 89 S. W. 21.

■ It appearing from the record that the witness was either not able to separate the injury caused by the possible influx of Johnson grass from other elements entering into his estimate of damages, or that he refused to do so, the trial court should have sustained the plaintiff's motion and have excluded the witness Sanders' testimony from the consideration of the jury. If the defendant had recovered damages upon the basis of prospective injury to the land by Johnson grass, it would have resulted in permitting the defendant to recover damages not within the contemplation of the law.

The question of the excessive jury verdict may not arise on another trial; hence we will not discuss it.

For the errors indicated, we reverse the judgment of the trial court, and remand the case to that court for a new trial.