## JOYCE v. DALLAS COUNTY.
### No. 3673.

Court of Civil Appeals of Texas. Beaumont.
June 10, 1940.

Rehearing Denied June 26, 1940.

Geo. F. Smith, Jr., Robert C. Johnson, and O. F. Wencker, all of Dallas, for appellant.

E. G. Moseley, Harold McCracken, and David Weinstein, all of Dallas, for appellee.

WALKER, Chief Justice.

On September 30, 1939, on the verdict of a jury answering special issues, judgment was entered by the County Court of Dallas County at Law No. 2, against appellant, Miss Marita Joyce, in favor of appellee, County of Dallas, condemning a strip of land 60 feet wide across certain land owned by appellant in Dallas county, containing 2.63 acres, as an extension of the right of way of Church Road No. 62. The right of way across appellant's land is described by metes and bounds in the judgment, as entered in the minutes of the court, Vol. 28, page 276. The appeal was prosecuted to the Dallas Court of Civil Appeals. The case is on our docket by order of transfer by the Supreme Court.

Appellant's first proposition is that appellee did not allege in its condemnation petition, upon which the commissioners were appointed, nor in its trial pleadings in county court, that appellee and appellant were unable to agree upon the value of the land, prior to the institution of the condemnation proceedings; that the evidence did not raise that issue; and that the court erred in refusing to submit to the jury certain questions specially requested, submitting that issue. These contentions are all overruled. In its petition for condemnation, appellee alleged: "Plaintiff would further show that acting by and through its duly authorized agents it has made a bona fide attempt to settle with the defendants or their agent and has attempted to purchase from them the above tract of land for public road purposes and that Plaintiff and the Defendants have been unable to agree upon the amount of compensation to be paid Defendants for said land."

On authority of Houston North Shore Ry. Co. v. Tyrrell, 128 Tex. 248, 98 S.W. 2d 786, 108 A.L.R. 1508, and the authorities therein cited, this allegation was good

as against appellant's proposition. On the undisputed proof—the testimony of appellant herself—appellee made two efforts to reach an agreement with her as to the value of the very land condemned by the judgment, and appellant, refusing to accept both of appellee's offers, did not submit a counter offer. There is nothing in the record impeaching the good faith of appellee's agent in the offer made by him to appellant to purchase the right of way across her land. Since, on the undisputed proof, appellee made a good-faith offer to settle the controversy between it and appellant, the court did not err in refusing to submit that issue to the jury, on the question specially requested by appellant.

█ By her second point, appellant complains of the introduction before the jury of her tax assessment sheet for the year 1935, covering the land in issue. Her proposition is that this rendition sheet was irrelevant and immaterial since it formed no criterion by which the value of the land could be assessed; and since she did not testify as to the value of the property, the rendition sheet was not admissible as impeaching evidence; and "the time of the making of the assessment is too remote, the assessment having been made in 1939." As shown by the following statement taken from appellee's brief, there was a striking conflict between the testimony offered by appellant and the testimony offered by appellee as to the value of the land in controversy:

"S. R. Pitcock, witness for the condemnor, testified that the market value of the land in question was $175.00 to $200.00 per acre; R. L. Staten, a witness for the condemnor, testified that the market value of the land was $125.00 per acre; R. L. Palmer, witness for the condemnor, testified that the market value of the land was $125.00 to $150.00 per acre; Tom Jackson, witness for the condemnor, testified that the market value of the land taken was $150.00.

"O. E. Skipwith, a witness for the condemnee, testified that the market value of the land in question was $400.00 per acre; Clyde B. Hall, a witness for the condemnee, testified that the market value of the land taken was $250.00 per acre; H. E. James, a witness for the condemnee, testified that the market value of the land taken was $250.00 per acre; Chas. L. Joyce, father of the condemnee, a witness

for the condemnee, testified that the market value of the land taken was $300.00 per acre. The tax rendition referred to in appellant's Second Proposition is plaintiff's Exhibit No. 8, at page 219 of the Statement of Facts, which shows 22 acres in the N. McCreary Survey and 77 acres in the W. P. Wyche Survey, a total of 99 acres rendered at a total value of $1,360.00 for County taxation purposes. This Exhibit No. 8 appears to be signed by Marita Joyce."

On authority of Fort Worth & D. S. P. Ry. Co. v. Gilmore et al., Tex.Civ.App., 13 S.W.2d 416; Dickens County v. Dobbins et al., Tex.Civ.App., 95 S.W.2d 153, the rendition sheet was admissible. In State v. Doom, Tex.Civ.App., 278 S.W. 255, a tax rendition sheet more than four years old was held admissible.

We give appellant's fourth proposition: "It was error in permitting the plaintiff's witness Tom Jackson to testify over the objection of the defendant as to selling 85½ acres of land in 1936 near the farm of defendant and testifying as to the value of such farm upon a basis of taking in a cottage in trade and stating what value was placed on the cottage."

This proposition is overruled. In City of Houston v. Pillot, Tex.Civ.App., 73 S.W.2d 585, the condemnation proceedings were had in November, 1932; the court held that testimony was admissible of one sale made in 1928, and of another in 1929.

█ On the same authority, we overrule appellant's fifth proposition that the court erred in receiving evidence as to a sale in 1936 by Tom Jackson of a second tract of land of 190 acres "about a mile and a half from the land in question."

█ The second and third issues submitted to the jury, answered as indicated, were as follows:

"Question No. 2: From a preponderance of the evidence what do you find was the market value of defendant's tract of land exclusive of the strip of land condemned, immediately before the strip was taken for highway purposes? Answer in dollars and cents. Answer: $10,800.00.

"Question No. 3: Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by defendant in common with the community generally and not peculiar to them and connected with their ownership, use and enjoyment of the particular tract

of land across which the strip of land has been condemned, and taking into consideration the uses to which the strip condemned is to be subjected, what do you find from a preponderance of the evidence was the market value of the remainder of defendant's tract of land immediately after the taking of the strip condemned for highway purposes? Answer in dollars and cents. Answer: $11,520.00."

Appellant's sixth proposition is that these answers by the jury, on the evidence as a whole, indicated on its part "bias, prejudice, and unfairness." This contention is denied. The right of way was condemned across 25 acres of appellant's land. The statement given above supports these findings.

As shown by the statement made above, there was a sharp conflict in the testimony as to the market value of the land in issue, and the verdict of the jury, fixing the value of the land condemned at $460.-25 has support in the evidence.

The judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.