**The STATE of Texas and City of Tyler, Texas, Appellants,**

**v.**

**J. D. STIEFER et al., Appellees.**

**No. 431.**

Court of Civil Appeals of Texas.

Tyler.

June 19, 1969.

Rehearing Denied July 10, 1969.

Henry L. McGee, Jr., W. M. Williams, Jr., Tyler, for appellants.

Spruiell, Lowry, Potter, Lasater & Guinn, J. Donald Guinn, Tyler, for appellees.

DUNAGAN, Justice.

This is a condemnation suit. The appeal is from a judgment of the County Court of Smith County, Texas, in the sum of $12,-000.00 upon a jury verdict. The State of Texas and the City of Tyler, as condemnors, instituted this suit against J. D. Stiefer and wife, Bernice Stiefer, condemnees on appeal, and Tyler Bank and Trust Company, to vest in the name of the State of Texas the fee title to a portion of condemnees' property for a street and highway widening project, known as the Inner Loop across the north side of the City of Tyler, and land acquisition costs being shared equally by the State of Texas and City of Tyler. Tyler Bank and Trust Company was dismissed in the trial court as a party to the proceedings.

The parties stipulated the fair market value of the remainder of appellees' property immediately after the taking, the jurisdiction of the trial court, and the performance by condemnors of all procedural requisites to the institution of this proceeding. The only issue, therefore, for the jury's determination was the fair cash

market value of condemnees' property immediately before its acquisition (December 28, 1967) in these proceedings. The appellants have duly perfected their appeal to this court from the judgment below.

The sole issue submitted to the jury inquired of the fair cash market value of the property acquired in condemnation on December 28, 1967, to which the jury answered $12,000.00.

Condemnors complain of the admission into evidence of a letter from the Tax Assessor-Collector for the City of Tyler, addressed to condemnee, J. D. Stiefer, dated August 25, 1967, which, in part, reads:

"My office has been instructed by the *proper officials* of the Tyler Independent School District and the *City of Tyler* to adjust all property in the districts to its reasonable Cash Market Value.

\*    \*    \*    \*    \*    \*

"The reasonable Cash Market Value as of January 1, 1967, of the property stated on this notice has been set at $9,630, for the three districts that we represent." (Emphasis supplied.)

This letter was offered by the condemnees as an admission against interest against the City of Tyler only as to the reasonable market value of the property in question and for that purpose only. The condemnors' objection to the offer was (1) that it was hearsay; (2) that it was an ex parte statement of the person who had purportedly signed the letter; (3) that there was no showing that the person who made this statement had made an appraisal; (4) that the proper predicate had not been laid for introducing the letter, and (5) that it was offered against a party (State of Texas) in the lawsuit, who was not a party to the statement.

After the admission of the letter, the condemnors placed on the witness stand the Tax Assessor-Collector for the City of Tyler, whose testimony shows that when the Tax Department of the City of Tyler sent the letter in controversy of August 25,

1967, to Mr. Stiefer informing him that the reasonable cash market value of his property was $9,630.00, that they felt that to be the true cash market value of his property —that is, what a willing buyer would pay and what a willing seller would take. He further testified that at the time the letter was sent out, that the City of Tyler was willing to stand behind what was in it.

In the first part of 1967, the City of Tyler, through its governing body, in its own behalf and in behalf of the Tyler Independent School District and Tyler Junior College, began a re-evaluation program for the purpose of ascertaining the cash market value of the property within its jurisdiction. The cash market value of condemnees' property as shown by the letter was arrived at as a result of the city's re-evaluation program.

■ While the fair cash market value of the property as set out in the city's letter is not controlling, yet, it should be considered in connection with the other value evidence in the case in arriving at the market value of the land immediately before the taking. In re Site for Memorial Hall. City of Detroit v. Cristy, 316 Mich. 215, 25 N.W.2d 174 (1946). With this evidence not being conclusive on the jury, we do not think it can be said that the letter is not admissible as evidence for whatever consideration may be given it, because it may be of assistance to the jury in determining what the fair cash market value of the subject property is at the time of the taking. Louisiana Highway Commission v. Giaccone, 19 La.App. 446, 140 So. 286, 290 (1932); Minneapolis-Saint Paul Metropolitan Airports Commission v. Stawicki, 269 Minn. 264, 130 N.W.2d 503 (1964).

■ It is now the settled rule in this state that in condemnation proceedings evidence of the value for which the property is rendered for taxation by the landowner or his duly authorized agent is proper for the consideration of the jury as an admission against interest, and as tending to show market value, where the evidence

conflicts on that issue. Dickens County v. Dobbins, 95 S.W.2d 153 (Tex.Civ.App., Amarillo, 1936, n.w.h.); Joyce v. Dallas County, 141 S.W.2d 745 (Tex.Civ.App., Beaumont, 1940, n.w.h.); Fort Worth & D. S. P. Ry. Co. v. Gilmore, 13 S.W.2d 416 (Tex.Civ.App., Amarillo, 1929, n.w.h.); Medrano v. City of El Paso, 231 S.W.2d 514 (Tex.Civ.App., El Paso, 1950, n.w.h.).

Even though all of these cases are where the assessed valuation of the property was offered by the condemnor against the landowner, we do not know of any reason why the rules should not be applied to both condemnor and landowner alike nor have we found any authority and none has been cited which indicates that the rule should not so apply and the reasons for the rule suggest no ground for not so applying. United States of America v. Certain Parcels of Land in the County of Arlington, State of Virginia, 261 F.2d 287, 291 (United States Court of Appeals, 4th Cir., 1958).

The value evidence in the case at bar is conflicting. Condemnors' value witnesses testified to a value of between $6,000.00 and $7,000.00 for the property taken. Condemnees' value witness Hanna placed the value of $13,600.00 on the property and witness Doyle Stiefer, a condemnee, valued the property at $17,300.00. Under the record in this case, we think the trial court properly admitted the letter into evidence against the city as an admission and further as tending to show market value and may be considered as such in connection with other evidence since the evidence in this regard is conflicting. The city ought not to be in the position of fixing the cash market value on property for taxes and then be shielded from such cash market value of the property being offered as evidence against it on the issue of value in a condemnation proceeding. Golden City Park Corporation v. Board of Standards and Appeals, 29 N.Y.S.2d 837 (S.Ct., 1941).

This is not a case where the Tax Assessor-Collector makes up the annual tax assessment rolls and sends out notices or letters to the property owners stating the value of the property which was arrived at by the tax official or a case involving a tax rendition made by the property owner or his duly authorized agent and offered in evidence by the landowner against the condemnor. The value of condemnees' property as shown in the letter here in controversy was the result of a property re-evaluation made by the City of Tyler for the very purpose of ascertaining the cash market value thereof.

There does not seem to be any dispute that the governing body of the City of Tyler instituted the re-evaluation program that resulted in the setting of the cash market value on the property as stated in the letter. The cash market value of $9,630.00 was placed on the property by the city and not by the City Tax Assessor-Collector. The fixing of the market value of the property was an act of the governing body of the City of Tyler; consequently, the letter in question was admissible into evidence for the purpose it was offered. City of Dallas v. Malloy, 214 S.W.2d 154 (Tex.Civ.App., El Paso, 1948, writ dism.).

■ The City of Tyler, a condemnor, was a party to the condemnation proceedings and very much interested in the value to be placed on the property in question, and we have held that the letter was admissible against it as an admission. The evidence being admissible against at least one of the condemnors, the court did not commit reversible error in overruling condemnors' objection to the admission of the letter on the ground that the State of Texas, the other condemnor, was not a party thereto. Marsh v. State of Texas, 276 S. W.2d 852, 855, (Tex.Civ.App., San Antonio, 1955, n.w.h.); Rayburn, Texas Law of Condemnation, Sec. 144(1), page 435.

■ Moreover, an appellate court is not authorized to reverse merely because the record discloses some error reasonably calculated to cause the miscarriage of justice, but the party appealing must also show that it probably did cause rendition of an improper judgment. Rule 434, Texas Rules

of Civil Procedure; Dennis v. Hulse, 362 S.W.2d 308 (Tex.Sup., 1962). This the condemnors have failed to do in this case. Therefore, even if there was error in admitting the letter into evidence, it was harmless, as a complete study of the record does not demonstrate that this action of the court amounted to such denial of the rights of the condemnors as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in this case. The cash market value of the property as found by the jury is some $2,300.00 above the value the city set out in the controversial letter. It is significant that the $12,000.00 value found by the jury is somewhat closer to the value testified to by condemnees' expert witness Hanna than to the value stated in the letter here involved. In any event, the jury's finding is amply supported by the testimony of condemnees' value witnesses.

Condemnors next complain of the testimony of condemnees' value witness Hanna concerning two comparable sales of other property which he considered in forming his opinion of the fair cash market value of the property before the taking, because it was not shown that either of the sales was a free and open sale.

█ The objection made was that the proper predicate had not been laid for the proffered testimony. The objection is too general to warrant consideration without specifying wherein the predicate is inadequate. Objection to admission of evidence should be specific, not general, and must be such as can be understood by the court and obviated by other evidence introduced by the opposing party, if possible. Bohanan v. Hans, 26 Tex. 445 (S.Ct., 1863); Dabney v. Keene, 195 S.W.2d 682, 684 (Tex. Civ.App., El Paso, 1946, writ ref., n.r.e.); Loumparoff v. Housing Authority of City of Dallas, 261 S.W.2d 224, 228 (Tex.Civ. App., Dallas, 1953, n.w.h.); 56 Tex.Jur.2d, page 516, Sec. 171. However, if we consider the objection as being sufficient, we do not think error was committed in the admission of the complained of testimony.

In City of Amarillo v. Attebury, 303 S. W.2d 804, 806 (Tex.Civ.App., Amarillo 1957, n.w.h.), the court said:

"* * * In connection with the sale of the Mathes tract, appellant by cross-examination continued to inquire about the necessity of McNaughten to buy this particular property. Appellee proved the sale, and we do not think that appellee had to prove that McNaughten was not under necessity to buy but if the appellant wanted to show that the purchaser was under necessity to buy the weight of the evidence was shifted to appellant on this point. * * *" See Baetjer v. United States, 143 F.2d 391, 397 (Cir.Ct. of App., 1st Cir., 1944).

In discussing this same question, the Eastland Court of Civil Appeals in State of Texas v. Childress, 331 S.W.2d 230, 236 (1960, writ ref., n.r.e.) cited the Attebury case with approval wherein the court said:

"* * * We are of the opinion that there was no error in the admission of the evidence concerning the comparable sale complained of in appellant's point number 12 on the ground that there was no showing that the sale was a voluntary one. City of Amarillo v. Attebury, Tex. Civ.App., 303 S.W.2d 804. If there was error, it was harmless."

█ In the case at bar, the condemnors had not only the witness Hanna before them, who could be cross-examined as to whether the sales were voluntary ones, but also condemnees' witness, James L. Hough, who was the seller in the sales that witness Hanna discussed. Condemnors took the witness Hanna on voir dire to test his knowledge of the two comparable sales and thereafter cross-examined him in detail concerning these sales. Condemnor also had an opportunity to cross-examine the witness Hough but in each instance, condemnors' counsel avoided or at least failed to inquire of either of these witnesses as to whether the sales were voluntary or free and open sales. We are of the opinion and

so hold that there was no error in the admission of the evidence concerning the comparable sales complained of on the ground that there was no showing that the sales were voluntary ones.

Hays v. State, 342 S.W.2d 167 (Tex. Civ.App., Dallas, 1960, writ ref., n.r.e.) states three instances in which comparable sales may be offered. In listing the conditions under which such sales may be offered, the court stated:

"Evidence of sales of comparable properties may be offered under three conditions: (I) on direct examination of expert or lay witnesses as independent substantive evidence of the value of the property to which the comparison relates, or (II) on direct examination of the value-witness to give an account of the factual basis upon which he founds his opinion on the issue of value of the real estate in controversy, or (III) on cross-examination of the value-witness to test his knowledge, experience and investigation and thus affect the weight to be given to his opinions. * * *"

■ Hanna testified that in arriving at the fair market value of the subject property, he obtained from the city a plat of the property to verify the lot size and shape. From this plat, he got the front footage and the useable space of the lot and took this into consideration on appraising the property as opposed to the building thereon. He further testified he went upon the property and made an inspection of it. After he had inspected the property, he checked his records for comparable sales to this particular property and found the two sales he testified about; that comparable sales is only one of the methods used to do appraisals. If there was error, it was harmless. Rule 434, T.R.C.P. Each of condemnors' points of error has been considered and is overruled.

Finding no reversible error in the record, the judgment of the trial court is affirmed.