Wesley W. WEST et al., Appellants,

v.

HOUSTON LIGHTING & POWER COMPANY, Appellee.

No. 15884.

Court of Civil Appeals of Texas, Houston (1st Dist.).

July 13, 1972.

Joseph F. Molloy, Dickinson, William E. Watson, Jr., Houston, for appellant.

McLeod, Alexander, Powel & Apffel, Robert W. Alexander, James L. Anthony, Galveston, for appellee.

PEDEN, Justice.

Landowners appeal from judgment based on jury verdict in suit brought by utility company to condemn an electric transmission easement strip 200 feet wide and containing 36.774 acres across a 941.89 acre tract.

The jury findings of market values on the date of taking, March 19, 1969, were:

1) 36.774 acre strip, just before it was subjected to easement:     $ 29,419.20
2) same strip, just after the taking of easement over it:     18,387.00
3) 905.116 acre remainder, just before easement was taken:     753,512.00
4) same remainder, just after easement was taken     724,092.80

A number of the appellants' points of error amount to assertions that 1) there was no evidence to support the jury verdict and 2) the evidence was insufficient to support the jury verdict and the verdict was so contrary to the great weight and preponderance of the evidence as to be clearly wrong. Appellants direct most of their attention to the first two special issues, particularly to the jury finding in response to Special Issue No. 2.

The parties stipulated that the only matter at issue between them was the market value of the easement taken and the damages, if any, to the remainder not taken, so the burden of proof was on the landowners.

We summarize the conclusions of the expert witnesses and the jury findings as to the market value of the 36.774 acre easement area:

|  | Before Taking | After Taking | Damage |
| --- | --- | --- | --- |
| George L. Reed (Appellants' witness) | $56,425.00 | $2,822.00 | $53,603.00 |
| Hank J. Thomas (Appellants' Witness) | $1600.00 per acre of $58,838.40 | $50.00 per acre or $1838.70 | $56,999.70 |
| T. A. Waterman (Appellee's witness) | $27,580.50 or $750.00 per acre | $13,790.25 or $375.00 per acre | $13,790.25 |
| Ralph W. Stamps (Appellee's witness) | $22,064.00 | $7,355.00 | $14,709.00 |
| Sid Holderidge (Appellee's witness) | $20,225.00 | $100.00 per acre or $3,677.00 | $16,548.00 |
| Jury answers | $29,419.20 | $18,387.00 | $11,032.20 |

The only other evidence of a valuation of the entire tract was that given on 1969 tax statements by an agent of the appellants. It will be discussed later.

Appellants complain that none of the witnesses testified that the value of the easement tract after the taking was as great as the jury found it to be and that none of the witnesses testified that the taking of the easement damaged the 36.774 acre tract as little as the jury found that it did.

The problem before us is similar to that we encountered in City of Houston v. Ready, 370 S.W.2d 210 (1963, no writ). In that case we noted that a jury may ignore opinion evidence and draw its own conclusion from other evidence as to the ultimate issue of market value, citing Harris County Flood Control District v. Hill, 348 S.W.2d 806 (Tex.Civ.App.1961, writ ref., n. r. e.); Lee v. Briscoe Irrigation

Co., 350 S.W.2d 894 (Tex.Civ.App.1961, writ ref., n. r. e.) and Simmonds v. St. Louis, B. & M. Ry. Co., 127 Tex. 23, 91 S. W.2d 332 (1936). The question is whether there is other evidence sufficient to support the jury's finding as to the market value of the 36.774 acre tract after it was made subject to the easement. See also Cannon v. State, 473 S.W.2d 325 (Tex.Civ.App. 1971, no writ).

We have reviewed the entire record in this case. In addition to the conclusions of the expert witnesses, which we have recited, we will notice only a part of the other evidence on which the jury might have based its second finding.

Although each of the real estate appraisers based his expert opinion as to the market value of the 36.774 acre tract subject to the easement on the market data approach, none of them testified as to the

sale of any tracts completely subject to electric transmission easements. This is not surprising, since sales of strips of land subject to such easements seem to be infrequent, but it is significant that they based their testimony as to this valuation solely on their respective opinions.

The 941.89 acre tract is located near the northwestern corner of Galveston County. It is less than four miles south of Friendswood and is within the western boundary of the city limits of League City. Like most of the other land within a radius of a mile or two, it is flat and has been used principally for rice farming, cattle grazing and a little truck farming. There was a degree of agreement among the expert witnesses that it is potentially suitable for development as residential subdivisions if population growth in the area continues and that meanwhile its agricultural use is the best method to offset some of the expense of holding it.

There was testimony that except for the small part of the easement tract occupied and to be occupied by the towers supporting the condemnor's transmission lines, the easement tract could continue to be used for growing rice.

There is evidence in the record that on March 19, 1969, the landowners' tract was already being crossed by two pipelines, a ditch, an irrigation canal, and another light company easement.

The jury came closest to agreeing with the valuations of the 36.774-acre strip given by Mr. T. A. Waterman, a real estate appraiser and broker, both before and after that strip was subjected to the easement, but in both instances the jury's valuation was higher than his. Its findings were that the pre-condemnation market value of the strip was approximately $52. per acre higher than his appraisal and that its post-condemnation market value was approximately $124, higher than his appraisal.

■ Mr. Waterman was called as a witness by the condemnor, but the general rule is that a party does not vouch for the accuracy of opinion testimony and is not bound by what an expert says. Gulf, Colorado & Santa Fe Ry. Co. v. Abbey, 313 S. W.2d 108 (Tex.Civ.App.1958, no writ); Brumit v. Cokins, 281 S.W.2d 154 (Tex.Civ. App.1955, writ ref. n. r. e.); Starks v. City of Houston, 448 S.W.2d 698 (Tex.Civ.App. 1969, writ ref. n. r. e.).

■ As the Texas Supreme Court stated in Texas Pipe Line Co. v. Hunt, 149 Tex. 33, 228 S.W.2d 151 (1950), all opinion is at best something of a speculation and the question of market value is peculiarly one for the fact finding body, subject to the control of the court in the manner indicated in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194 (1936). Under the evidence in our case the jury was entitled to balance such factors as the greater diminution in market value of the strip in the light of the possible future development of the land as a residential subdivision against the strip's lesser diminution in market value based on its continued use as rice farming and cattle grazing land. Potential future residential development, probably dependent on the housing supply and demand in the area, will be influenced by many factors which are difficult to evaluate.

Population growth in the area, attraction of new industries, highway construction in the area and in other directions from Houston and Galveston, availability of money for housing and other developmental costs, and the future condition of the economy are just a few of the matters which may bear on how much the strip of land was damaged by the taking.

■ We conclude that from this evidence the jury was entitled to consider too low the opinion evidence of the appraisers as to the market value of the 36.774 acre tract after it was taken for easement purposes; also that the jury finding in response to Special Issue No. 2 is supported by sufficient evidence and is not so contrary to the great weight of the evidence as to be clearly wrong.

For the same reasons we find no error in the trial court's having entered a judgment based in part on the difference between the jury's answers to the first and second special issues, since the jury's first finding is clearly supported by the evidence. Appellants admit that the jury's answers to Special Issues 1, 3 and 4 are within the range of the evidence elicited in the trial.

Appellants present other points of error asserting that the trial court erred 15) in not allowing a reading of plaintiff's petition in condemnation to the jury, 16) in not allowing it to be introduced into evidence, 17) in defining "permanent easement" in the charge so that the rights and reservations specified were different from those set out in the condemnor's petition, 18) in entering judgment granting the same easement sought in condemnor's petition but different from that defined in the charge and 19) in refusing appellants' requested definition of the rights and reservations contained in the easement, which definition was identical to the wording of the condemnor's petition and the judgment of the court.

We have been unable to find in the record that the trial court refused to permit the condemnor's petition to be read to the jury. It seems that appellants' counsel read parts of it to a witness. We think the trial court did not err in sustaining an objection to the admission in evidence of the petition. The trial court did have the duty, by way of instruction in the court's charge, to explain the rights of the parties under the particular easement being sought. White v. Natural Gas Pipeline Co. of America, 444 S.W.2d 298 (Tex.1969); Texas Power & Light Co. v. Cole, 158 Tex. 495, 313 S.W.2d 524 (1958). We overrule the appellants' fifteenth and sixteenth points of error.

Appellants' points of error 17 through 19 show reversible error only if there is a difference in substance between the permanent easement as defined in the court's charge and that awarded in the judgment.

The appellants point out that the court's charge defined permanent easement as "the right to use the land for the purpose of construction, operation, maintenance and servicing electrical transmission and distribution line or lines, together with structures, apparatus and appurtenances thereto for the purpose of supplying the public with electric current, power and energy, reserving to the owners in addition the rights reserved as a matter of law the following specific rights with reference to such property:

"1. Any and (sic) oil, gas or other minerals in, on or under such land.

"2. The right to fully enjoy said premises except as may be inconsistent with or interfere with the right and privileges necessary to Plaintiff in the construction, maintenance, replacing, removing and operation of said lines.

"3. Plaintiff shall have no right to pass back and forth across Defendants land outside the 200 feet easement area and shall have only the limited right of ingress and egress through the 200 foot easement area, and no right of ingress or egress through the remaining lands of the Defendants without making just compensation for the use of Defendants remaining lands.

"4. Plaintiff shall have no right to fence or enclose said land or to use it for any purpose other than as aforesaid, and the right of Defendants and subsequent owners of said land to pass back and forth across the easement area on foot or in vehicles, to cultivate or landscape the same, to raise crops or gardens thereon, or to use it for recreational or any other purposes not inconsistent with Plaintiff's use of the land as aforementioned, shall not be obstructed or interfered with, except to the extent above stated.

"5. The Defendants and all subsequent owners of the land shall have the right to lay out, dedicate, construct and

maintain roads, streets, alleys, railroad tracks, underground communication conducts, and gas, water, and sewer pipelines across the easement area provided.

"6. The Defendants and all subsequent owners of the land shall have the right to erect fences across and upon the easement area, provided all such fences have gates, openings, or removable sections which will permit reasonable access to all of said easement area, and further provided that such fences shall not be placed along, as distinguished from across the said easement."

■ Appellants complain in particular that they were prejudiced in that the court's charge did not advise the jury that the landowner cannot erect buildings or other structures (except cross fences) on the easement but that the judgment did so provide. We think that under the trial court's definition of "permanent easement" the rights of the condemnor in its use of the easement are shown to be such that it would be inconsistent with such rights for the landowner to be permitted to erect buildings or similar structures on the right-of-way. Further, the evidence introduced in the trial court was that "the landowner cannot build any buildings or structures on this easement," but that he can build a fence.

■ Appellants also point out that the court's charge advised the jury that the condemnor cannot fence or enclose the land, while the judgment was silent as to this matter. In Aycock v. Houston Lighting & Power Co., 175 S.W.2d 710 (Tex.Civ. App.1943, writ ref. w. o. m.), we held that it was proper to so advise the jury; the owner of the easement has no statutory or common law right to build fences along the sides of the right-of-way unless it acquires that right in the condemnation proceedings. It is not necessary to spell this out in the judgment, but to do so would not be erroneous.

There were other inconsistencies between the definition of the permanent easement in the court's charge and the provisions concerning it in the judgment. We have examined each one. While it would have been better to have avoided those differences, they were minor ones, and we hold that the error, if any, was harmless.

The appellants next assert that the trial court erred in allowing into evidence, over objection, testimony that the condemnor put the easement to a lesser use than that permitted under its petition, and in failing to charge the jury as requested by the appellants that "you are instructed to consider, in answers to the special issues, the fullest possible use of the 'permanent easement,' as defined in this charge by the condemning authority, Houston Lighting & Power Company."

On June 28, 1972, while this case was on appeal to this court, the Supreme Court of Texas in City of Pearland v. Alexander, 483 S.W.2d 244, held that a somewhat similar jury instruction was improper as a comment on the weight of the evidence.

■ We have examined the testimony complained about in our case. Although a little of it was hearsay, and thus improper, we construe the bulk of it to constitute evidence of what the utility company's reasonably foreseeable and probable uses of the condemned tract would be, and thus proper under City of Pearland v. Alexander, supra, rather than evidence of promises or representations that the physical structures erected on the condemned tract after the taking and before the trial would not be increased in the future. Testimony of the latter type is not permitted under the rule announced in Perkins v. State, 150 S. W.2d 157 (Tex.Civ.App.1941, writ dism.).

■ We have examined the entire record in this case and consider that even if the admission of such testimony was error,

it was harmless. Rule 434, Texas Rules of Civil Procedure.

The appellants' next points of error are that the trial court erred in allowing 22) continued questioning of appellant Wesley W. West in regard to tax assessments and renditions by the Galveston County Tax Assessor and Collector as to the valuation of the property in question on the tax rolls of Galveston County and 23) in allowing, over objections, the testimony of a deputy tax assessor and collector as to the valuation put on the property by his superior.

We overrule these points of error. Exhibits 38, 39 and 40 introduced by the condemnor were the 1969 "Inventory of Property" of the three tracts which made up the subject property in this case, and they were the subject-matter of the testimony complained about in these two points of error. They were signed by William R. Crain; the parties stipulated that he was the duly authorized agent of Mr. Wesley West to sign and execute tax rendition forms for him. Appellants assert that these forms do not amount to renditions, but the exhibits and evidence at least show that Mr. West acquiesced in the placing of an assessed value on the land amounting to about $37. per acre. There was evidence that property in Galveston County is placed on the tax rolls at 25% of its value.

We find no error in the questioning of Mr. West as to whether he knew the assessment ratio employed in taxing land in Galveston County, and as to the value it was rendered for. He testified that he did not know the answer to either inquiry. Questions do not constitute evidence, and the ones asked were not prejudicial.

It would have been hearsay and improper to have shown by the deputy tax collector the valuation placed on the property by the tax collector, had no other evidence been offered on the subject. However, when Mr. West, through his agent, left these figures unchanged instead of substituting others for them when he caused the inventory to be filed, this was a rendition and amounted to an adoption of the tax collector's valuation or an acquiescence in it. McFaddin v. State, 373 S.W.2d 259 (Tex.Civ.App.1963, writ ref., n. r. e.).

It is settled that renditions for taxation are admissible as declarations and admissions against interest for the purpose of showing value. 22 Tex.Jur.2d 416, Eminent Domain § 295; State v. Stiefer, 443 S.W.2d 275 (Tex.Civ.App.1969, writ ref. n. r. e.); Medrano v. City of El Paso, 231 S.W.2d 514 (Tex.Civ.App.1950, no writ) and cases cited.

"In general it may be said that any statement made by a party or on his behalf which is inconsistent with his present position is receivable as an admission." 2 McCormick & Ray, Texas Law of Evidence 29 (2nd ed.), § 1141; Culver v. State, 324 S.W.2d 921 (Tex.Civ.App.1959, no writ).

Appellants' last point of error is that the trial court erred in refusing Wesley W. West's application to represent himself in the trial. This point is based on Rule 7, Texas Rules of Civil Procedure, which provides: "Any party to a suit may appear and prosecute or defend his rights therein, either in person or by an attorney of the court."

We overrule this point. Mr. West was represented by competent counsel. The rule does not require that he be permitted to prosecute his rights both in person and by an attorney of the court. The record does not disclose that he was restricted in communicating with his attorney. Instead, it shows that he voluntarily absented himself from the court as soon as he left the witness stand early in the trial.

The judgment of the trial court is affirmed.